RALPH S. AND JOHN FRETZ, APPELLANTS, v. JOHN C. BULL, WILLIAM J. M'CLURE, AND THOMAS S. FOREMAN, PARTNERS, TRADING UNDER THE NAME AND STYLE OF J. C. BULL & CO., FOR THE USE OF THE FIREMEN'S INSURANCE COMPANY OF LOUISVILLE.

The extent of the admiralty and maritime jurisdiction of the courts of the United States, as explained in the preceding case, again affirmed.

In admiralty, the party entitled to relief should always be made libellant; and the practice of instituting a suit in the name of one person for the benefit of another, to whom the right has been transferred, only obtains in particular cases. But all persons entitled, on the same state of facts, to participate in the same relief, may join as libellants, whether the suit be in personam or in rem.

Hence, where the cargo of a boat was partly insured, but not the boat itself, and the insurance company paid for that part of the cargo which was insured, it was competent for the owners of the boat to file a libel for the use of the insurance company.

In this case, where a collision took place between a steamboat and a flatboat, both descending the Mississippi River, the steamboat was in fault.

The flatboat was in an eddy of the river, and impelled by it towards the steamboat, and the latter should have kept further away.

THIS was an appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

The facts in the case are stated in the opinion of the court.

The cargo of flatboat No. 2 consisted of 3,136 sacks of corn, 31 barrels and one keg of lard, 315 sacks of oats, of which there were insured,

| | |
|---|---|
| 1,643 sacks of corn (4,125 bush. at 75c.) | $3,093 00 |
| 158 sacks oats (353 bush. at 40c.) | 141 20 |
| 17 barrels of lard | 333 63 |
| | $3,567 83 |

which was paid by the insurance company, with a small deduction. When paid, there was an argument between the insurance company and John C. Bull & Co., that the latter would include the insurance company in the libel.

The libel was filed by John C. Bull, William J. M'Clure, and Thomas S. Foreman, trading under the firm of John C. Bull & Co., in the District Court of the United States. They were the owners of the boat and of the corn, and filed the libel for the use of the insurance company. A variety of testimony was taken, the important parts of which are stated in the opinion of the court.

The District Court gave judgment in favor of the libellants, in the sum of $3,753.45.

The defendants appealed to the Circuit Court.

The Circuit Court affirmed the judgment of the District Court, and the defendants appealed to this court.

It was argued by *Mr. Coxe*, for the appellants, and submitted, on printed argument, by *Mr. Clay*, for the appellees.

The greater part of the argument consisted in an examination and comparison of the evidence, which cannot be reported.

*Mr. Coxe*, for the appellants, made the following law points:

In cases of collision, the law requires that there should be preponderating evidence to fix the loss upon the party sought to be charged, before he can be condemned to make compensation. The Ligo, 2 Hag. 356; Curtis's Adm. Dig. 144, sect. 6.

A collision may happen without blame being imputable to either party. In such case the loss must be borne by the party upon whom it happens to light. It may be the result of mutual negligence or misconduct. In such case, the Supreme Court of Louisiana has decided that plaintiff cannot recover. 3 Ann. Rep. 441.

The general presumption in favor of the party charged is in this case corroborated by a single fact, in regard to which there is no contrariety in the evidence. It seems agreed, on all hands, that the head of the steamboat had passed the flatboat before the collision occurred, and before any one anticipated the danger. Nothing, under such circumstances, could have led to the catastrophe, but the unexpected movement of the flatboat, occasioned by the eddy.

As to the measure of damages, it is submitted that, in a case of this description, vindictive damages ought not to be allowed; nor is the party entitled to more than indemnification. Under this rule, where the property injured is *in transitu*, and has not reached the port of destination, the prime cost and the necessary expenses incurred, furnish the measure of damages. *Amistad de Rues*, 5 Wheat. 385; Amiable Nancy, 3 Wheat. 546; 1 Paine, 111; The Lively, 1 Gall. 308; The Apollon, 9 Wheat. 362.

Another question arises in this case. After the master and crew had been carried to New Orleans in the Memphis, in March, 1847, namely, in March, 1848, Bull and his partners bring this suit for the use of the Firemen's Insurance Company of Louisville. From the bill of lading, it appears that the cargo belonged to several individuals. The insurance effected by them, March, 22, 1847, covered the entire cargo; but there was no insurance on the boat itself. The amount of loss, $3,496.48, was paid, May 4, 1847; and it was agreed that Bull & Co. should bring a suit for the recovery. The judgment was for $3,753.45, exceeding the loss paid by the insurance company, with interest, and manifestly included the boat, &c.

The action is brought, as the libel avers, (p. 4,) exclusively for the use of the insurance company; yet the claim embraces the boat, on which there was no insurance.

1. It is submitted that, after the payment of the loss by the company, Bull & Co. had no right to bring this suit, he being already paid.

2. That if the insurance company brought suit, it was entitled to recover no more than what was actually paid by it.

3. That, in this action, the claim for the loss sustained by the cargo was improperly joined with a claim for the injury to the boat, the insurance company having no interest in the latter.

Mr. Justice WAYNE delivered the opinion of the Court.

Two objections were urged in the argument of this cause by the appellants' counsel, against this court giving a decision upon its merits.

The one, that the court had not jurisdiction on account of the locality of the collision, it being beyond tide-water; and the other, that the libellants could not prosecute this suit for the benefit of others, as the libellants have no interest in it.

The first may be disposed of, because the court, at this term, has decided, in the case of the Genesee Chief *v.* Fitzhugh et al., that the constitutional jurisdiction of the United States in admiralty was not limited by tide-water, but was extended to the lakes and navigable rivers of the United States.

The other objection is not sustained by the proofs in the cause. Mr. Atwood, p. 39 of the record, states what was the amount of insurance which was paid upon the cargo, by the Firemen's Insurance Company of Louisville, and that nothing was paid to the libellants, Bull & Co., for the loss of the boat.

In admiralty, the party entitled to relief should always be made libellant; and the practice of instituting a suit in the name of one person for the benefit of another, to whom the right has been transferred, only obtains in particular cases. But all persons entitled on the same state of facts to participate in the same relief, may join as libellants, whether the suit be *in personam* or *in rem.* Benedict, 211, sect. 380.

Mr. Atwood, in his testimony, says, how Bull & Co. became united with the insurance company in this suit, though it is not stated in the libel with the precise formality it should have been, yet it appears sufficiently plain in other parts of the libel, and from the proofs in the cause, that the parties named in the libel have respectively an interest, which is covered by the principle just stated, that the same state of facts which will give relief to one will permit others to be joined as libellants. It is no substantial objection, then, that the suit has been brought

in the name of Bull & Co., for the use of the Firemen's Insur·ance Company. The insurance, in this instance, was upon the cargo of boat No. 2, and not upon the boat. The cargo, however, was not fully insured. The insurance company, upon being informed of the loss of it from a collision with the Memphis, paid their policy upon it, and that placed them in a condition to bring this suit for its recovery, if it could be ascertained that the collision was produced by the fault of those who were in charge of the steamer belonging to the appellants.

We will now inquire from what cause the collision happened, or who was in the fault.

In the second article we have a description of its locality. It was at a point in the Mississippi River opposite Prophet's Island, in the State of Louisiana, and took place on the 11th April, 1847, on a clear day, between the hours of nine and ten o'clock, in the forenoon, whilst the flatboat, No. 2, was going down stream in the usual and proper channel. It seems, that she was drawn in towards the shore by an eddy, and that whilst there, the steamer Memphis, also descending the river, and the flatboat came in contact with each other, from which the flatboat was capsized and sunk in less than four minutes, losing her whole cargo, excepting sixteen barrels and one keg of lard. The allegation is, that the steamer, with proper care and skill, might with great ease have been kept clear of said flatboat, and that the flatboat could not possibly get out of the way of the steamboat, but was run against by the steamer with great force and violence, striking her on her starboard quarter and causing her to fill rapidly. The answer of the respondents to this allegation is, that the steamer was carefully going down the Mississippi, being at the time in the proper place for a descending boat, and that the officers on board of said steamboat observed two flatboats in the eddies, on both sides of the river, one in the eddy on the right side of the river, the other in that on the left, the latter being the flatboat, No. 2. It is further stated that when the flatboats were discovered, there was ample space for the steamboat to pass safely between them. The flatboat on the right hand side of the river was nearest the steamboat, and was first passed. It is also stated, that in order to leave ample room for passing in safety flatboat No. 2, which was on the left side, that the Memphis was steered as closely to the first flatboat as it was prudent or safe to go; that after that boat had been safely passed, the flatboat, No. 2, appeared to be some two hundred yards in the eddy from the course of the steamer, the captain of her requesting that a Louisville paper might be thrown into the river for him, stating that he would send his skiff out for it. Up to this time there was not the slightest apprehension of a

collision. The captain of the Memphis not liking the position of the flatboat, she being at the time off to the left of his boat, with her bow nearly at right angles to his boat, requested the persons on the boat to throw down her stern. The captain of the flatboat seized the helm and endeavored to do so, but could not succeed. A moment before this, no one could have supposed a collision possible, but just about the time the bow of the Memphis passed the flatboat, she being then a considerable distance to the left of the course of the Memphis, a sudden change in the current of the eddy, or some other cause unknown to these respondents, threw the said flatboat against the larboard wheel-house of the Memphis, nearly bow foremost, which started one of the planks of her bow, causing her soon to fill with water and sink. That previous to, and at the time of the collision, the Memphis was running in the current of the river, between the two eddies.

From these allegations of the appellants and respondents, substantially agreeing with each other, as to the eddies, the locality of the collision, and the relative positions of the boats to each other at that moment, it would be difficult to determine by the fault of which of them the disaster was occasioned. But from the antecedent navigation of the Memphis from the point where the flatboats were first observed, whether it shall be taken from the narrative of the respondent just recited, or from the evidence in the case, it cannot be doubted that the collision was produced by the carelessness or ignorance or disregard of her pilot of the consequences which those eddies might produce in the positions in which the Memphis and flatboats then were. It is not denied by the respondents, and it is asserted by the libellants, that the flatboat was, from the time the Memphis first saw her, until she was sunk, in the proper channel of downward navigation, floated onward only by the current. The captain of the Memphis, in his downward course, was the first to discover the danger resulting from the position in which his vessel had been placed relatively to the flatboat. He says, he did not like it, and requested those on board the flatboat to throw down her stern. He admits, that the captain of the flatboat endeavored to do so, but could not succeed. He had approached the flatboat, without any change in the position of the flatboat up to that moment. Now, if according to his own declaration, the collision occurred but a moment after, before he can be excused for his near approach to the flatboat, he must show that there was not water-room, and of sufficient depth, to have run the Memphis further off than he did, and that there was not, on either side of the flatboat, a sufficient width of water for him to have passed the flatboat at a distance greater than the length of the

Memphis, for it is plain, if that had been done, whether the eddy. turned the flatboat or not, that the two boats could not have come into collision. The evidence on the part of the respondents, confirms this view of the case; for Galusha says, that at the time of the collision, there was room enough for the Memphis to pass without interfering with the flatboat at all; and Thomas testifies, that the flatboat was floating with the current, and the steamboat running with the stream, and though that at the place of accident, there was an eddy on both sides of the river, that the river was very high and broad, and the Memphis might have passed on either side and thereby prevented the accident. It is further stated by this witness, that the Memphis was coming towards the flatboat, and if we had pulled from her we should have got into the eddy towards her, and she would have run over us; we did every thing we could to prevent said accident, and it was not caused by the carelessness or want of skill of the crew of the flatboat. Yourd, another witness, confirms this statement, and that the Memphis had " a plenty of room to avoid her." Henry Moore, another witness says, that the accident was caused by the fault of the pilot or crew of the steamboat Memphis; that it occurred in daylight, when there was no fog on the river and no wind; that on the left side of the steamboat there were three hundred yards of water; and on the right side one hundred yards; that the steamboat might have passed on either side with perfect safety to herself and the flatboat, as there were neither bars nor snags in that part of the river; but that instead of passing around, she undertook to run between the flatboat and a hay boat that was floating between us and the right-hand shore, and struck our boat as he has stated. The respondents' witness, Bentley, confirms the statement of the last witness, that the steamer run between the two boats, running as near to the boat on the right, in order to leave as much room for the one on the left, as possible; and that he did not, after he had passed the boat on the right, apprehend there was any danger of collision with the boat on the left; that the Memphis kept a straight course down the current of the river, and did not suppose, when the Memphis passed the first flatboat, that he would run within a hundred yards of the boat, No. 2. He further states, that the flatboat, No. 2, did not change her relative position to the course the Memphis was running, but it was caused by the eddy forcing out the flatboat into the current of the river; that he, as the pilot, ran the Memphis in such a manner as he thought would prevent a collision. He thinks the Memphis was fifty yards from the flatboat, when the bow of the Memphis passed her; at that time witness was running, quartering into the bend on

the left. About that time he was apprehensive of a collison, and that it was caused by the approach of the flatboat. But this witness says, that the river at the place of collision was from three quarters to a mile wide. Now with this fact, stated by himself, why was it necessary to run the Memphis on such a course as that such a collision should have happened? Or why was she not run at such a distance as that it could not have occurred? Added to this, this witness knew the force of the eddies, and should have guarded cautiously against their effect.

This is a cause of collision happening in broad daylight after the steamer had observed the flatboat for more than the distance of half a mile. The evidence shows, that the steamer could have been differently navigated from the manner in which she was, and that the course she was run, though in the judgment of the pilot was the best under the circumstances, yet that it was a course which caused the collision, and that another might have been taken by which there would have been no possibility of a collision.

The judgment of the Circuit Court is affirmed.

Mr. Justice DANIEL dissented from the decision in this case, on the ground of the want of jurisdiction in the admiralty courts of the United States, in cases like the present.

## Order.

This cause came on to be heard on the transcript of the record, from the Circuit Court of the United States, for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause, be, and the same is hereby affirmed with costs, and damages at the rate of six per centum per annum.