## THE PRUSSIA.

### (District Court, D. Washington, N. D.   March 10, 1900.)

1. ADMIRALTY—PARTIES—ASSIGNMENT FOR PURPOSE OF SUIT.

   There is no substantial objection to permitting a libelant to maintain a suit in rem in his own 'name, on a claim assigned to him for that purpose, for the benefit of his assignor, where he also has a cause of action in his own right which he intends to prosecute, arising out of the same facts, and to be tried in part on the same evidence, so that there will be a saving of expense in trying the two cases together.

2. SHIPPING—DELAY IN DELIVERY OF CARGO.

   Promptness in the transportation of merchandise is a substantial condition of a contract of affreightment, and where shipowners fail to deliver cargo within the time reasonably necessary to make the voyage, and the delay is not due to stress of weather or any of the causes for which they do not assume liability, they are liable to the shipper for losses resulting to him from such delay, although no time for delivery was fixed by the bill of lading.

3. ASSIGNMENT OF CAUSE OF ACTION—VALIDITY—COLLATERAL ATTACK.

   The validity of an assignment of a cause of action by a corporation cannot be collaterally attacked on the ground of alleged technical irregularities in the proceedings of the corporation by the defendant in a suit thereon by the assignee, where no objection is made by the corporation or its stockholders.

4. SHIPPING—BREACH OF CONTRACT OF AFFREIGHTMENT—RIGHT OF ACTION.

   Where, by a contract for the sale of lumber to be delivered at a distant port, a part of the price was to be paid on delivery, and on shipment of the lumber a bill of lading was issued, by the terms of which delivery was to be made to the consignor or order, and such bill was forwarded, with a draft for the price attached, which was not paid by the purchaser, and the lumber was therefore not delivered to him, he never became the owner of the consignment, so as to sustain any contract relation with the carrier which would support a suit in rem against the vessel for a breach of the contract of affreightment contained in the bill of lading.

Suit in rem against the ship Prussia to recover damages for delay in carrying and delivering a shipment of horses, hay, and other merchandise from Seattle to Skagway; also upon a second cause of action to recover damages for breach of a contract for the sale and delivery at Dyea of 200,000 feet of lumber. Decree for libelant on first cause of action. Dismissed as to second for want of jurisdiction.

Fred H. Peterson, J. D. Jones, and Alfred Battle, for libelant.
Gorham &·Gorham, for claimant.

HANFORD, District Judge.   The first cause of action is upon a contract of affreightment.   As to this I find that the firm of Barneson & Chilcott, in the capacity of loading brokers for the ship Prussia, on February 14, 1898, entered into a contract with one Roberts for the transportation on the Prussia of from eight to fifteen horses, and a quantity of hay, oats, and other merchandise, and four passengers, from Seattle to Skagway.   Forty dollars on account of the freight was paid on that day, and a receipt was given containing an agreement fixing the rate to be paid for freight, providing

that the passengers were to be carried free, and stipulating that the ship was to sail on or about February 17th. It was understood by the parties that the ship was to be towed all the way from Seattle to Skagway. It was also well understood that time was important. In January and February, 1898, there was a rush of people to the Yukon river mining districts, via the Seattle-Skagway route, and there was great demand at Skagway for horses to haul freight over the mountains on sleds before the snow melted. It is shown by the evidence that during the sledding season a team could haul many times the weight that two horses could pack on their backs after the snow melted, and that during the rush each horse could earn for his owner from $20 to $30 per day, and Mr. Roberts was taking horses there to use in that business. He also included in his shipment 10 tons of hay, in excess of what he required for immediate use for his own teams, which he expected to sell in Skagway at a good profit. In making his contract, Roberts relied upon representations made to him by Barneson & Chilcott's clerk in their office, to the effect that the largest and best tug would be secured to tow the Prussia, and that said vessel would deliver her cargo at Skagway as soon as any other ship could deliver it there. The ship was not ready on the day appointed for her departure, and the trip was unexpectedly delayed by storms which prevented all the tugs which were available for the service from coming into port. On February 21st, Roberts delivered eight horses and his other property to the ship, and accepted a bill of lading containing a contract for the transportation service, which did not specify any date for the departure or arrival of the ship or the time allowed for the voyage. The ship remained in Seattle waiting for a tug until the 24th, and was then taken by a small tug to Port Townsend, where she remained until March 5th. She was also delayed on her passage north by a barge loaded with lumber being towed by the same tugboat, and by other causes which are not fully explained in the evidence, so that she did not reach Skagway until the evening of March 16th, being delayed altogether at least 14 days after the date of arrival contemplated by Mr. Roberts at the time of placing his property on the ship. By being deprived of the use of his horses at that particular time, Mr. Roberts suffered a loss approximating $200 per day, and substantially all his anticipated gains from his adventure, as the season for profitable use of horses terminated about the time that his horses were in condition fit for use, which was not until several days after they were landed, on account of the bad effect of their long confinement on shipboard. He also suffered a loss on the hay which he had for sale by the decline in market value of hay at Skagway. However, I find, from undisputed evidence in the case, that Mr. Roberts' hay was not first quality, and it would not have been readily salable at the highest price if the vessel had made the trip on time. I find, also, that the market was affected by the other consignments of hay on the same ship, and there would have probably been a decline in the market price of hay on arrival of the ship, if she had not been delayed. Roberts paid the balance of the freight

charges under protest, and then disposed of his horses and other property to the best advantage. For the sake of economy in the cost of litigation, Mr. Roberts made a written assignment of his claim for damages to the libelant, for the express purpose of authorizing him to sue upon it in connection with another claim for damages of a similar nature against the same ship, which he was intending to prosecute.

At the threshold of this case, I am required to consider and pass upon exceptions which the claimant has interposed denying the right of an assignee to maintain a suit in rem to recover damages for the breach of a contract, and it is especially insisted that the libelant is not the real party in interest, but is simply a volunteer, prosecuting the case in his own name for the benefit of the assignor. Courts of admiralty are not favorably inclined towards the practice of carrying on litigation in the name of a party whose rights are not involved, but who appears as a mere volunteer to conduct litigation in his own name for the benefit of some one else. Nevertheless, in a case like this, where the libelant has a claim in his own right arising from the same facts, and to be tried in part on the same evidence, so that there will be a saving of expense by trying the two cases together, there appears to be no substantial ground for objecting to an assignment of one cause of action to a party having a definite purpose to bring suit upon a different cause of action, which he claims in his own right. In the case of Fretz v. Bull, 12 How. 466, 13 L. Ed. 1068, the supreme court of the United States held that in a case in which the libelants have an interest in the suit, and the same state of facts entitle other persons to relief, there can be no substantial objection to an assignment by such other persons of their claims, and the prosecution of the case by one person for the benefit of the assignors as well as for his own benefit. On the authority of this decision by the supreme court, I overrule the claimant's exceptions to the first cause of action.

The principle seems to be well settled, by numerous decisions of the highest courts of this country, that promptness in the transportation of merchandise is the life of trade, and therefore carriers are held to strict performance of their engagements. As Mr. Roberts did not deliver his property to the ship until several days after the time originally designated for departure of the Prussia from Seattle, I hold that he waived his right to insist upon the letter of his original contract as to the time for the voyage to begin, and the bill of lading which he accepted does not specify any date upon which the carrier agreed that the voyage should begin or the property should be delivered at its place of destination; but the agents of the owners, by making the contract with Roberts, and by receiving the property for transportation, took upon themselves the burden of securing the necessary motive power to prosecute the voyage without delay. They entered into the contract voluntarily, and whatever loss necessarily resulted from their inability to perform their contract should properly fall upon the principal party for whom they were acting. Thomas v. Railway Co. (C. C.) 63 Fed. 202; Sanders v. Munson, 20 C. C. A. 581, 74 Fed. 649.

I consider that it was a substantial part of the agreement for which Roberts paid his money that the vessel should be dispatched promptly after his horses and other freight were taken on board, and that unless prevented by stress of weather, or other misfortunes for which shipowners do not assume liability, the property should be transported and delivered at Skagway within the time reasonably necessary for making such a voyage by a vessel of the class to which the Prussia belongs. 5 Am. & Eng. Enc. Law (2d Ed.) 244; The Niagara v. Cordes, 21 How. 22, 16 L. Ed. 41; Railway Co. v. Hall, 14 C. C. A. 153, 66 Fed. 868.

I consider, also, that this contract was not kept. On the contrary, there was delay of at least 14 days, not due to any of the causes which exempt the ship and her owners from liability, during which time Mr. Roberts' loss, by being deprived of the use of his horses, amounted to $2,800. Allowing $300 for possible losses by accident if his horses had been landed in time, it appears with reasonable certainty that the net amount of his losses caused by the delay amounts to $2,500 in the value of the use of his horses. I find, also, that he suffered a loss by decline in the price of hay of $15 per ton on the 10 tons which he intended to sell at Skagway, making the total amount of damages on the first cause of action $2,650, for which amount, with costs, a decree will be rendered in favor of the libelant.

The second cause of action is based upon the following written contract:

### "Contract of Affreightment.

"Barneson & Chilcott, party of the first part, hereby agrees with the Lynn Canal Commercial Company, of Dyea, Alaska, parties of the second part, to deliver to them on the ship Prussia, to leave Seattle on or about the 15th day of February, the following specification of lumber: * * * The above to be a good grade of second-quality lumber. For and in consideration of the lump sum of $4,000.00, covering cost, freight, insurance to the value of $4,000, and wharfage charges at this end, and to be delivered at ship's tackles at the port of Dyea, Alaska, or as near as the ship can safely lie afloat. The conditions of this contract are that the Lynn Canal Commercial Co. shall pay the sum of $2,000.00 cash on signing same, and balance, the sum of $2,000.00, they shall give their draft for, attached to ship documents, to be paid on arrival of ship at the aforesaid port of Dyea. All of the above conditions are hereby agreed to by both parties of this contract, and we herewith sign our names this 2d day of February, 1898."

This contract was signed by Barneson & Chilcott, and by the Lynn Canal Commercial Company, by its president, J. D. Jones, the libelant. In fulfillment of the contract, the Port Blakely Mill Company, the claimant in this case, by request of Barneson & Chilcott, placed the lumber contracted for on board the ship Prussia, and a bill of lading was issued to the Port Blakely Mill Company containing a contract for the carriage of the lumber to Dyea, and to be delivered there at the ship's tackles, "unto order or assigns, freight on the same having been paid." The contract was negotiated by the libelant, and at the time of signing it he paid to Barneson & Chilcott $2,000. On arrival of the Prussia at Dyea, the draft for $2,000, provided for in the contract, was presented to Mr. Jones, acceptance was refused, and it has not been paid, and the lumber was not delivered. There is a conflict

in the testimony as to the reason assigned by Mr. Jones for nonacceptance and nonpayment of the draft. On the part of the claimant evidence has been introduced tending to prove that the libelant assigned his inability to pay the full amount as his reason. There is a preponderance of the evidence, however, and I find the fact to be, that acceptance was refused because the libelant claimed to have been damaged by delay in the arrival of the vessel. The libelant sues as assignee of the Lynn Canal Commercial Company. The validity of the assignment by that corporation is disputed, but on this point I have reached the conclusion that technical irregularities in the proceedings of the corporation, if there were any, do not make the transaction void, nor voidable, unless taken advantage of in a proper way by the corporation itself, or its stockholders or creditors. The claimant is in no danger of being prejudiced, and it cannot raise a collateral issue, and require the court to adjudicate questions affecting the rights of parties who are not before the court. There is a serious contention between the parties as to whether Barneson & Chilcott made the contract as principals, or merely as agents of the Port Blakely Mill Company, but, as I have reached a conclusion which makes this question immaterial, I will not discuss it.

Coming, now, to the main question, as to the right of the Lynn Canal Commercial Company or its assignee to maintain a suit in rem for damages resulting from a breach of the contract by delay in the delivery of the lumber, it is important, in the first place, to determine the nature of the contract. It is styled "Contract of Affreightment," and the case has been tried on the part of the libelant upon the theory that the ship is liable for delay in performing a contract for the transportation of property of the Lynn Canal Commercial Company, and the libelant assumes in the argument that said company was the consignee and owner of the lumber, and contends in the argument that the title to the lumber passed at the time of its shipment. It is true, as a general proposition, that when merchandise has been sold to a purchaser at a distance its delivery to a carrier, consigned to the purchaser, is a legal delivery, and the transfer of title is thereby completed, and that the carrier from the time of receiving the shipment, and not the consignor, stands obligated to the consignee for any loss or injury to the merchandise or delay in its transportation. 1 Pars. Cont. (7th Ed.) *533; The Sally Magee, 3 Wall. 451–460, 18 L. Ed. 197; Lawrence v. Minturn, 17 How. 100, 15 L. Ed. 58. But to have the effect of a constructive delivery, or to constitute the carrier an agent of the purchaser, the merchandise must be in fact consigned to the purchaser, so that the carrier will be authorized to deliver the same to him on arrival at the place of destination, on receiving payment of the freight, and under no obligation to hold the property for the consignor. 2 Pars. Cont. (7th Ed.) *291, *292; De Wolf v. Harris, Fed. Cas. No. 4,221. Notwithstanding its caption, the body of the written contract shows that, instead of being a contract of affreightment, it is a contract for the sale of lumber. By the terms of the agreement, the purchaser was bound to make full payment of the contract price before delivery, and the place of delivery and the manner of making the final payment are specified. It is therefore inconsistent with the

terms of the contract for the libelant to claim a delivery of the lumber, in such a way as to pass the title, at the place of shipment. The bill of lading for the lumber is a proper instrument for carrying out the intention of the parties as expressed in the written contract for sale of the lumber. In commercial law, a bill of lading is legal evidence of title to property in transit, and the rights of the parties may be governed by it terms. 4 Am. & Eng. Enc. Law (2d Ed.) 546; Shaw v. Railroad Co., 101 U. S. 557-567, 25 L. Ed. 892. If the document specifies that the merchandise is to be delivered at the place of destination to a consignee named, it will be the duty of the carrier to deliver to the person named as consignee. If the document specifies that delivery is to be made to the holder, a mere delivery of the bill of lading will be effective to transfer the title, and the carrier will be bound to require production of the bill of lading, and to deliver the merchandise to the holder, and to no one else. If the bill of lading contains the name of the consignor, and specifies that the property is to be delivered to order, and is sent forward attached to a draft, the carrier will not be authorized to deliver the property if the drawee refuses to accept the draft. Grove v. Brien, 8 How. 429, 12 L. Ed. 1142, and note; National Bank of Commerce of Boston v. Merchants' Nat. Bank of Memphis, 91 U. S. 92-105, 23 L. Ed. 208. In this case there could not be a lawful delivery of the lumber until the draft was paid. Therefore the Lynn Canal Commercial Company never became the owner of the lumber, and there is no contract relationship between that company or its assignee and the carrier. In receiving and transporting the lumber the carrier in this case was the agent of the Port Blakely Mill Company, consignor of the lumber, and the only contract for which the ship became liable is the contract contained in the bill of lading, to which the Lynn Canal Commercial Company is not a party. That company never did have any right to enforce it, or to collect damages for its violation, because the document never came into its possession. If the contract for sale and delivery of the lumber has been violated, the remedy of the purchaser is in a personal action for damages against the vendor, and whether Barneson & Chilcott or the Port Blakely Mill Company is in fact the principal contractor is immaterial in this case, because the contract is not a maritime contract, and this court, as a court of admiralty, has no jurisdiction of any suit which can be founded upon it. I therefore direct that a decree be entered dismissing the second cause of action, for want of jurisdiction.