## THE MANDU.

### In re COMPANHIA DE NAVEGACAO LLOYD BRASILEIRO.

#### No. 12172.

District Court, E. D. New York.

June 3, 1936.

See, also, 11 F.Supp. 845.

Purrington & McConnell, of New York City, for petitioner.

Single & Tyler, of New York City, for claimant.

MOSCOWITZ, District Judge.

This is a proceeding for limitation of liability brought by the Companhia De Navegacao Lloyd Brasileiro for damage sustained by virtue of a collision between the petitioner's steamer Mandu and the German steamer Denderah. The collision, which occurred on July 31, 1929, off the coast of Brazil, caused the Denderah to sink. The owner of the Mandu, a Brazilian vessel, instituted this proceeding seeking the benefits of the limitation of liability statutes of the United States and requesting the court, if found at fault for the damage sustained, to limit its liability to the value of the vessel and its pending freight in accordance with such statutes. Claimant's position is that of underwriter and subrogee as to certain cargo losses, and the assignee of other underwriters who paid losses to cargo owners on account of cargo damage sustained in the collision.

By order of this court dated January 29, 1936, petitioner was permitted to amend its petition and notice of objection to the claim filed by claimant herein. Articles "thirteenth" and "fourteenth" of the amended petition read as follows:

"Thirteenth: Petitioner further alleges:

"(a) that the aforesaid collision occurred, not on the high seas, but on the territorial waters of the United States of Brazil.

"(b) that at the time of the collision, the Mandu was a Brazilian vessel, flying the flag of the United States of Brazil, her home port being Rio de Janeiro, United States of Brazil.

"(c) That at the time of the collision the Denderah was a German vessel, flying the flag of the Republic of Germany, her home port being Hamburg, Germany.

"(d) That the republic of Germany and the United States of Brazil were at the time of the collision parties to a treaty entitled 'The International Convention for the Unification of Certain Rules of Law in Regard to Collision', also known as 'The Brussels Convention of September 23, 1910'.

"(e) That by said treaty said nations agreed on behalf of their nationals that where a collision occurred between their seagoing vessels, compensation due for damages caused to their vessels, or to any cargo on board thereof should be made in accordance with the provisions of said treaty, in whatever waters the collision took place; that said treaty should not affect in any way the law in force in each country with regard to the limitation of shipowners' liability; and that the provisions of said treaty should be applied as regards all persons interested when all the vessels concerned in any action were of the nationality of the high contracting parties. A full and true copy of said convention in the French language, together with a translation thereof in the English language, is annexed hereto, made a part hereof, and marked Schedule E.

"(f) that the aforesaid treaty was, at the times hereinbefore stated, and now is, in full force and effect between the Republic of Germany and the United States of Brazil.

"(g) that by virtue of the aforesaid treaty, if both vessels were in fault, the liability of each vessel is in proportion to the degree of faults respectively committed.

"(h) that the faults of the Denderah were very great and if this court holds that the Mandu was in any respect at fault, which petitioner denies, damages resulting from the collision should be allocated in proportion to the degrees of faults, pursuant to the provisions of said treaty.

"Fourteenth. That the claimant, the Great American Insurance Company was not at the times it filed its libels and its claim, and is not now, the real party in interest in respect of the damages by it demanded, or any of them; but that on the contrary all the real parties in interest are citizens and residents of the Republic of Germany and of the United States of Brazil; that the sworn allegations of the Great American Insurance Company, in its libels and claims, with respect to its title to said claims for said damages are untrue; that said claimant, the Great American Insurance Company is not now, and was not at the times it filed its libels and claim, subrogated to all claims which its assureds had against the steamship

Mandu, as it alleged under oath; that on the contrary whatever interest the said Great American Insurance Company had or has by reason of any amounts it may have paid to its assureds, was insignificant in comparison with the total claims and demands it has made upon the steamship Mandu; that whatever amounts the Great American Insurance Co. paid to its assureds, or any of them, were payments of parts of the loss, or losses, only, and not payments of entire loss or losses sustained by the assureds, or any of them; and that therefore the said Great American Insurance Company was not, and could not be, thereby subrogated to all the rights of its assureds, or any of them, against the steamship Mandu."

The amended objection reads as follows:

"Please take notice that the Companhia de Navegacao Lloyd Brasileiro, as owner of the steamship 'Mandu' hereby objects to the claim of the Great American Insurance Company, verified January 20th, 1931, and filed in this action, on the following grounds: that the alleged damage claimed by said Great American Insurance Company was not caused or contributed to by the Companhia de Navegacao Lloyd Brasileiro, the steamship 'Mandu', or those in charge of her; that claimant is not the real party in interest and hence has no right to prosecute the claim; that the real parties in interest are citizens of Germany or Brazil not now before this Court; and that this Court should therefore dismiss said claim; and the Companhia de Navegacao Lloyd Brasileiro prays that said claim may be disallowed and excluded unless established by further legal proof on notice to the proctors for the Companhia de Navegacao Lloyd Brasileiro, and otherwise in the manner provided by law."

Claimant has interposed exceptions to the aforesaid articles of the amended petition and to the amended objection. In view of the following disposition thereon, it is unnecessary for the court to consider the procedural point raised by the petitioner with respect to the filing of the said exceptions by claimant.

The "thirteenth" article to the amended petition is sufficient in law. It is elemental that the law of the place of a wrong determines whether a person has sustained a legal injury (Restatement of the Law of Conflict of Laws, §. 378), and as the allegations in the aforesaid article must be accepted as true for present purposes, the Brazilian law must govern in the determination of the substantive rights of the parties. The collision is alleged to have occurred between a German ship and a Brazilian ship on Brazilian territorial waters. The treaty known as "The International Convention for the Unification of Certain Rules of Law in Regard to Collision," hereinafter referred to as the Brussels Convention, is the source of the law which controls in the determination of the rights and liabilities which flow out of a wrong committed on Brazilian territorial waters, since the Brussels Convention has been adopted by Brazil and Germany as governing all collisions between vessels operated by their respective nationals. It is manifest that recourse to that law is proper in order to ascertain the quantum of damages permitted in connection with the wrong involved, for the measure, elements, and extent of the damages given by the lex loci pertain to the substance of the right, not to the remedy. Royal Mail Steam Packet Co. v. Companhia De Navegaco Lloyd Brasileiro (D.C.) 31 F.(2d) 757, 758; Smith v. Condry, 1 How. 28, 11 L.Ed. 35; American Banana Co. v. United Fruit Co., 213 U.S. 347, 348, 355, 29 S.Ct. 511, 53 L.Ed. 826, 16 Ann.Cas. 1047; New York Central R. Co. v. Chisholm, 268 U. S. 29, 32, 45 S.Ct. 402, 69 L.Ed. 828, 38 A.L.R. 1048; Western Union Telegraph Co. v. Brown, 234 U.S. 542, 34 S.Ct. 955, 58 L.Ed. 1457; Slater v. Mexican National R. Co., 194 U.S. 120, 24 S.Ct. 581, 48 L. Ed. 900; Lauria v. E. I. Du Ponte De Nemours & Co. (D.C.) 241 F. 687; The Eagle Point (C.C.A.) 142 F. 453. It is true, as claimant asserts, that the consequence of the obligation created by the law of the place of the wrongful act is not the same as that which would attach if the act occurred on domestic territory; for under the law as it obtains in Brazil, the Brussels Convention being the source of that law, the liability to the innocent cargo owner of vessels at fault is in proportion to the degree of the faults respectively committed (Brussels Convention, article 4), while under the common law and the admiralty law administered in this country an innocent party who has sustained damage due to wrongs of joint tortfeasors is entitled to an entire compensation from any one of the wrongdoers (The Atlas, 93 U.S. 302, 23 L.Ed. 863). But it does not follow that this court is at liberty to refuse to enforce the foreign

630

law here relied upon merely because it differs from the domestic law in the respect just mentioned. As Judge Cardozo stated in Loucks v. Standard Oil Co., 224 N.Y. 99, 111, 120 N.E. 198, 201, "We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." The difference between the two laws in so far as they deal with the extent of the obligation created by a wrongful act of the type herein involved is a difference which merely relates to the amount of damages a tort-feasor is called upon to pay. It cannot be said that such difference is sufficient to warrant the court of the forum to reject the foreign law upon the ground that it is violative of a fundamental principle of justice or prevalent conception of morals. It must be held, therefore, that the foreign law in question, in so far as it deals with the extent of the tort-feasor's obligation, does not contravene domestic public policy. The various other arguments submitted by claimant's proctors are not considered sufficiently persuasive to warrant a holding contrary to that made by Judge Campbell in the case of Royal Mail Steam Packet Co. v. Companhia De Navegaco Lloyd Brasileiro (D.C.) 31 F.(2d) 757. There, libelant was permitted to amend its libel by alleging the law of Belgium to obtain the benefit of that law with reference to fixing liability in proportion to the degrees of fault. Likewise, here, under article 4 of the Brussels Convention, a similar method of liability is fixed and article 13 of the amended petition is properly pleaded for the purpose of giving to petitioner the benefit of that law.

Article 14 of the amended petition is also sufficient in law. Exceptions are in the nature of a demurrer and the sufficiency of this article as pleaded is the sole question for determination. The court must ignore the factual dispute with respect thereto set forth in the proctors' briefs and accordingly allows the amendment in view of the well-settled rule that suit in admiralty must be brought by the real party in interest. Wittig v. Canada S. S. Lines (The Concordia) (D.C.) 59 F.(2d) 428; Smith v. Kernochen, 7 How. 198, 12 L.Ed. 666; Fretz v. Bull, 12 How. 466, 13 L.Ed. 1068; The Prussia (D.C.) 100 F. 484; Goldman v. Furness, Withy & Co., Ltd. (D.C.) 101 F. 467, 468; The Trader (D.C.) 129 F. 462; Hughes on Admiralty (2d Ed.) p. 404; Benedict on

Admiralty (4th Ed.) § 195, p. 152. The same principle requires a conclusion that the amended objection is also proper.

The exceptions are overruled. Settle order on notice.