**GULF OIL CORPORATION,**
Libellant,

v.

**The PATSY CHOTIN, her Engines, Tackle, Apparel, Furniture, Etc., and Chotin, Inc., Respondent.**
**No. 292.**

United States District Court
E. D. Kentucky, Catlettsburg, Division.
May 26, 1955.

State of Louisiana. The Gulfcomet, a tug, which was the property of the libellant, with a tow of three loaded barges, was proceeding eastward. The barges passed each other in a bend in the canal, at which time the lead barge of the Gulfcomet grounded on her right hand bank.

The Patsy Chotin was a twin screw Diesel boat with 2400 horsepower. The boat and her tow had an overall length of 580 feet and a width at the widest point of 50 feet. The Gulfcomet was a much smaller and less powerful boat. It was a single screw Diesel boat with 400 horsepower. She and her tow had an overall length of 600 feet and a maximum width of 40 feet.

The width of the canal at the point where the boats passed was 125 feet. There was no physical contact between the craft. All witnesses testified that at the time of passing there was a distance of 20 to 30 feet between them.

It is claimed by the libellant that in order to avoid physical contact the Gulfcomet was forced into the bank and aground by the Patsy Chotin and her tow of barges. It is claimed that the Patsy Chotin was being navigated in a negligent manner in that she failed to give proper signals, was being operated at an excessive speed for the time and place, and was using too much of the channel by not keeping sufficiently to her right side.

The question of the negligence in the operation of the Patsy Chotin is the first question presented and one on which I think this case may properly be decided. The evidence is brief. Eyewitnesses on each of the boats testify as to what occurred. Their evidence is in direct conflict. The Master and a member of the crew of the Patsy Chotin say that the boat at the time was being operated at about 4½ miles per hour; that she was well to her right hand side of the channel and had given all required signals. The Master and members of the crew of the Gulfcomet say that their boat was being operated in a careful manner and under control, was traveling at a speed of five or six miles an hour and had giv-

Terriberry, Young, Rault & Carroll, New Orleans, La., Dysard & Dysard, Ashland, Ky., for libellant.

Jones, Walker & Waechter, New Orleans, La., William B. Dreux, New Orleans, La., Howard VanAntwerp, Jr., Ashland, Ky., for respondent.

SWINFORD, District Judge.

The libellant is seeking to recover damages from the Tug Patsy Chotin and the respondent, Chotin, Inc., for alleged negligence growing out of the following facts. On March 27, 1951, at about 3:30 P.M., the Patsy Chotin and her tow of two empty barges were proceeding westward in the intracoastal canal in the

en all required signals. The Master of the Gulfcomet further expresses the opinion that the Patsy Chotin was going at a speed of approximately 15 miles per hour and that by this high speed created such waves in the channel that the Gulfcomet was washed to one side and aground.

It would not be possible to accept the evidence and reasonable inferences which may be drawn from it of either the witnesses for the libellant or the witnesses for the respondent and reach a conclusion as to who was at fault or what was the proximate cause of the grounding of the barge. The Court must therefore look to the physical facts and surrounding circumstances about which these witnesses are testifying and from which there can be little dispute.

The burden of proof rests primarily upon the libellant. If there was negligence it is its responsibility to establish that negligence. It is seeking to recover by way of damages a large sum of money and it must convince the Court by a preponderance of evidence that this damage was the direct result of the negligent operation of the Patsy Chotin at the time and place in the pleadings and proof described. For a full and complete recovery it must also show that there was no contributory negligence on the part of the crew that operated the Gulfcomet. The Scow No. 27, 4 Cir., 164 F.2d 778.

In discussing the standards of liability and negligence, the libellant, in its brief, relies on three cases: Fretz v. J. C. Bull Co., 12 How. 466, 13 L.Ed. 1068; The Belle, D.C., 34 F. 669; and The Laura v. Rose, D.C., 28 F. 104. The case of The Columbia, C.C.N.Y.1876, Fed.Cas. 3,036, cited in brief, is not available to me. It will be noted that these cases are all very old, the most recent of which was reported in 1888.

In Fretz v. J. C. Bull Co., supra, the facts are so dissimilar to the case at bar that it is of no value as an authority. In that case, at a point in the Mississippi River where the river was three quarters to a mile wide and at the time very high, a steamer rammed a flatboat which was floating under its own power. Witnesses established the fact to the mind of the Court that the steamer had ample room to pass on either side of the flatboat, which the pilot had seen for one half mile before he rammed it. Just before the contact an eddy in the river swung the flatboat into the path of the steamer. The Court placed emphasis upon the fact that the pilot of the steamer was amply warned and had sufficient time and space to avoid the contact had he exercised reasonable judgment.

The case of The Belle, supra, is from a district court, decided in 1888, and deals with a collision between two tows. The incident was in a narrow channel in the North River in the nighttime (1:00 A.M.). The Court found that both vessels were at fault, one of which was charged to have neglected to take into account the ebb tide which it must have known would swing its tow in the path of approaching vessels at the rate of speed which it was traveling. The other vessel was held to be at fault because it failed to use the amount of space which was available to it at the time of the incident. There is no remote connection between that case and the instant case.

The case of The Laura v. Rose, supra, is of little value as authority for the reason that the facts are so entirely dissimilar. In that case a schooner and a steam vessel approached each other at night in the Delaware River. The schooner was yawing or deviating from her course as the vessels neared each other. The Court found that one of them suddenly changed its course and that this action was the cause of the resulting damage. Both vessels were held to be at fault. It was held that the schooner failed to maintain a proper lookout and failed to adopt proper navigation practices to prevent its yawing. Since the schooner was a sailing vessel and was proceeding on her sails, the Court found that the steamer was in fault in not recognizing this fact

and providing sufficient navigating space for a sailing vessel as there was ample room to provide such space. The Court found that the river was three quarters of a mile wide at the point of collision.

One of the strong circumstances in the instant case is that the craft did not actually come into contact. They were never closer than 20 feet to each other. The channel was narrow. The tow of the Patsy Chotin had a width of 50 feet. The tow of the Gulfcomet had a width of 40 feet. This gives a maximum width of 90 feet. If we add to this the 20 feet distance between the boats, making 110 feet, there would be left only 15 feet in which the two boats could maneuver in this 125 foot channel. I am unable to see why the Gulfcomet could not have safely come much closer to the Patsy Chotin by using up some of the 20 to 30 feet which separated the two boats. Had she done this it is a very reasonable inference from the record that she would not have grounded the barge. I cannot believe that a heavily loaded tow of three barges and the tug could have been washed from its course or had from that source such interference as to make it less maneuverable. It is much more reasonable to assume that the Gulfcomet was too small and without sufficient power to handle the heavy tow and to compensate for the reasonably anticipated hazard of navigating in the canal at that point.

I cannot find as a fact that the speed of the Patsy Chotin was excessive. As I have pointed out there is conflict in the evidence which fixes the speed from 4½ miles per hour to 15 miles per hour. Irrespective of what the speed was, there is insufficient certainty in the evidence to justify a reasonable inference that the speed of the Patsy Chotin created such waves that the Gulfcomet and the three loaded barges were washed from their course in the channel. The Court must find that the speed of the Patsy Chotin was not a factor in the mishap.

There are other circumstances which are of less significance but which should be given some consideration in the light of the whole record. The witnesses for the libellant are those who were in charge of the boat at the time of the grounding and who were naturally responsible for its safety. These witnesses are still in the employ of the libellant and while it is not implied that they have given erroneous or colored testimony it must be assumed that they have presented the facts as they saw them in the best way to place the blame on others than themselves. The witnesses for the respondent are no longer in its employ and have less reason to protect their actions and judgment at the time.

It should also be pointed out that the damage occurred on March 27, 1951. A letter dated April 18, 1951, from the libellant to the respondent advised it of the claim for damages. The letter from the libellant was immediately acknowledged and all liability denied. The libel was filed on August 7, 1952, one year, four months and ten days after the grounding. In the meantime practically the entire crew of the Patsy Chotin were no longer in the employ of Chotin, Inc. It is apparent from the record that no serious effort was made in the interim to require payment for the damage. I have heretofore held that the defense of laches is not sustained by these facts and I now adhere to that ruling. It is proper, however, to consider the fact of long delay in determining a claim for damages in the light of the whole record.

I am of the opinion that the libellant has failed to sustain the burden of proof to establish actionable negligence on the part of the Patsy Chotin and her crew. Findings of fact, conclusions of law and judgment in conformity with this memorandum are this day entered.