## THE APURIMAC.

(District Court, E. D. Virginia. February Term, 1925.)

**1. Admiralty ⏘5—Admiralty has jurisdiction of injuries to seaman on foreign unseaworthy ship in American port.**

Matter of injury to foreign seaman on foreign vessel in American port through negligence of the owners in failing to keep it in a seaworthy condition is triable as matter of right in federal admiralty court.

**2. Seamen ⏘3—Right to lien for injury to foreign seaman on foreign unseaworthy ship in American port governed by United States laws.**

Right to lien on ship for injury to foreign seaman on foreign ship occurring in American port and caused by its unseaworthiness, resulting from negligence of its owners, is governed by law of United States.

**3. Seamen ⏘29(4)—Contributory negligence not bar to recovery for injury to seaman from maritime tort.**

Contributory negligence is not complete bar to suit in admiralty for injury to seaman from unseaworthiness of vessel resulting from negligence of owners, but goes only to reduction of damages.

In Admiralty. Libel by Echmundo Heredia against the steamship Apurimac. Decree for libelant.

Henry Bowden, of Norfolk, Va. (Samuel E. Forward, of Norfolk, Va., and S. B. Axtell, of New York City, of counsel), for libelant.

John S. Wise, Jr., of New York City, and Hughes, Vandeventer & Eggleston, of Norfolk, Va. (Barron F. Black, of Norfolk, Va.), for claimant.

GRONER, District Judge. From the Bench: [1] In the Roxen Case, 7 F.(2d) 739, 1925 A. M. C. 190, I dismissed the libel because the cause of action there asserted involved a controversy between the master of the ship and a seaman concerning a matter of internal discipline or discipline aboard the ship. The point involved in that case was that the Seamen's Act (38 Stat. 1164) conferred jurisdiction and made it obligatory on the court to assume jurisdiction. I held to the contrary as to this point. The view that I have always entertained as to the exercise of jurisdiction in cases like this is that the question is one of discretion, and that ordinarily admiralty courts will not assume jurisdiction where the controversy involves matters arising beyond the territorial jurisdiction of the court or of the country, or relates to differences between the master and the crew or the crew and the ship; that is to say, matters involving discipline on board ship. In other words, that controversies involving ordinarily the treatment of the crew, the food supply, and payment of their wages, except where the latter is affected by the Seamen's Act, are matters which should be left to the determination of the consul of the country whose citizens are thus involved.

The present case is not one which arose beyond the territorial jurisdiction of the country. It happened in an American port, and involves an alleged tort suffered by the libelant as a result of the negligence of the owners of the vessel in failing to maintain the vessel in a seaworthy condition. It is not a matter, so far as I am advised, which is covered by any treaty between Peru and the United States. It is therefore a matter which I believe is triable in an admiralty court in the United States, and in which discretion plays no part in the determination of the question of jurisdiction. But, even if this is not correct, and the jurisdiction is discretionary, it seems to me it ought to be exercised in a case of this kind, where the relation of the libelant to the respondent has been severed, and where an injury is alleged to have been sustained in an American port, for which a remedy is given by American law, but which is without remedy under the Peruvian law. The motion, therefore, to dismiss for lack of jurisdiction, or to refuse to entertain jurisdiction, ought to be overruled.

[2] The second point made by the respondent, namely, that a decree for damages may not pass in this case because under the Peruvian law an injured seaman is given no lien on the vessel for injuries sustained, even in a case of failure or neglect to provide suitable appliances or a seaworthy vessel, ought likewise to be rejected, because I am clearly of the opinion that the law of the United States is applicable under the circumstances here obtaining; the injury having occurred in an American port. This was held to be the law in the case of The Scotland, 105 U. S. 24, 26 L. Ed. 1001. See, also, The Hanna Neilsen (C. C. A.) 273 F. 171.

[3] This brings us to the question on the merits. The libelant claims to have been injured as the result of falling down the companionway or steps on the ship while engaged in the discharge of his duties; the fall being due to the fact that the step was defective, in that the brass plate on the tread had become loosened and projected, so that his foot caught in it, and he was thereby thrown to the bottom. I think, under all the circumstances, it is fair to accept the statement of the libelant and his witnesses that the injury occurred substantially as they allege it.

The question of defense of contributory negligence as a bar was also suggested, but I think may be disposed of without affecting the right to recover. In Carter v. Brown, 212 F. at page 393, 129 C. C. A. 69 (5 C. C. A.), it was held (headnote): "Contributory negligence is not a complete defense to a suit in admiralty for injury to an employé, but the proof goes only to a reduction of damages." So, also, in Port of N. Y. Steve. Corp. v. Castagna, 280 F. 618 (2 C. C. A.), it was held that there was a right to recover, irrespective of the libelant's own negligence, provided, of course, he can show negligence on the part of his employer, and this right to recover it was there held arises out of the fact that he suffered a maritime tort. See, also, The Colusa, 248 F. 21, 160 C. C. A. 161. Notwithstanding, therefore, the fact that libelant claimed to have knowledge of the defective plate and to have reported it to the master, still even at common

law I doubt if he would have been held to have assumed the risk, since the danger was not so open and obvious as necessarily to have put a man of ordinary prudence upon his guard, and certainly not in a case of maritime tort.

A great many other facts shown in the evidence satisfy me that the plaintiff's injury was exaggerated and intensified by reason of his disregard both of the advice of physicians, the master of the vessel, agents of the vessel, and ordinary prudence. When he was first injured, and report of it was made to the master, he was given an opportunity to go to a doctor or a hospital, and this he declined, stating that he had received an injury to his arm at the same place in a football game in Peru, and that he thought it would be all right with a little salve and bandaging. His subsequent conduct was likewise at variance with the exercise of care for his own safety and protection; but even with all of this he has, in my opinion, with due regard to the evidence of the medical men, suffered no serious injury. An inspection of his arm does not show any permanent injury lessening to any material extent his efficiency. He was taken care of by the shipowner until removed to Ellis Island, and they expended apparently somewhere in the neighborhood of $300 or $400 in his care and cure. Even his own physician estimates the damage to his arm at something less than 10 per cent. I think this is perhaps an exaggeration, and that, taking all things into consideration, he is as able to work now as he was before the injury occurred, particularly if I accept, as I am disposed to, the statement that he had sustained a previous injury to the same arm.

For his loss of time and expenses I think some small award should be made, but that ample compensation would be met by a decree in his favor of $400.