CANADA MALTING CO., Limited, v. PATERSON STEAMSHIPS, Limited.

BRITISH EMPIRE GRAIN COMPANY, Limited, v. SAME.

STARNES v. SAME.

Nos. 433-435.

Circuit Court of Appeals, Second Circuit.

July 21, 1931.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson, of New York City, Laurence E. Coffey, of Buffalo, N. Y., and Andrew J. McElhinney, of New York City, of counsel), for appellants.

Stanley & Gidley, of Buffalo, N. Y., for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

These cases come before us upon the allegations of the libels, admitted by respondent's exceptions, and upon the facts stated in supporting and opposing affidavits filed on the motion to decline jurisdiction and dismiss the libels. The three suits are alike. Each libelant was an owner of cargo shipped under a Canadian bill of lading for transportation on the steamer Yorkton from one Canadian port to another, and lost in consequence of a collision between the carrying vessel and the respondent's steamer Mantadoc. The collision was alleged to have been caused by faults of the Mantadoc. It occurred in Lake Superior on the American side of the international boundary, and the Yorkton was so badly damaged that she sank; her cargo becoming a total loss. Both vessels were of Canadian registry, and each was owned by a Canadian corporation. An investigation conducted at Toronto by the Dominion Wreck Commissioner resulted in a finding that the masters of both vessels were at fault. Immediately after the libels were filed in the court below, the respondent be-

gan a suit, which is still pending, in a Canadian admiralty court against the owner of the Yorkton, to recover collision damages suffered by the Mantadoc.

Upon the filing of the libels and the seizure under writ of foreign attachment of the respondent's vessel Lachinedoc at the port of Buffalo, the respondent appeared generally and filed stipulations for release of its vessel. Before the return day it excepted to the libels and moved for a dismissal of the suits. After hearing upon libels, exceptions, and affidavits, the motion was granted.

Not only are the libelants and the respondent Canadian subjects, but the officers and most, if not all, the members of the crew of each vessel are residents of Canada and so not available for compulsory attendance as witnesses in the District Court. This was considered an important consideration by the court below, as was also the fact that under our law an innocent cargo owner can recover full damages from the noncarrying vessel, if both the colliding vessels were at fault (The New York, 175 U. S. 187, 209, 20 S. Ct. 67, 44 L. Ed. 126), while, under the Canadian law, it is asserted, only half damages would be recoverable from the respondent. The Yorkton has been salvaged, and it is contended by libelants that under the rule of The Chattahooche, 173 U. S. 540, 19 S. Ct. 491, 43 L. Ed. 801, the respondent could implead the owner of the Yorkton and recoup one-half of its liability to cargo owners, but there is a dispute whether the salved value of the Yorkton would afford the respondent adequate protection so that the maintenance of the libels here would be no more disadvantage financially than suits by the cargo owners in Canada. The respondent offered, if the libelants were remitted to their home forum, to appear and give adequate security in any suits they might there bring upon their cargo claims, and the decrees below directed the respondent to perform this offer. No one has questioned this feature of the decrees, and we say nothing as to it.

The appellants advance two propositions as reasons for reversal of the decrees of dismissal: First, that the District Court had no discretion to decline jurisdiction; and, second, that, even if it had, dismissal of the suits was an abuse of discretion.

■ The argument in support of the first proposition is grounded upon the assertion that, since the collision occurred within territorial waters of the United States, the rights and obligations of the parties are to be determined by the law of the place where the tort was committed. Smith v. Condry, 1 How. 28, 32, 11 L. Ed. 35; Slater v. Mexican National R. R. Co., 194 U. S. 120, 126, 24 S. Ct. 581, 48 L. Ed. 900; New York Central v. Chisholm, 268 U. S. 29, 32, 45 S. Ct. 402, 69 L. Ed. 828, 38 A. L. R. 1048. It is conceded that in suits between foreigners a court of admiralty may for good cause decline to retain jurisdiction provided the law to be applied is foreign law, but it is contended that, when a maritime tort is governed by the law of the forum, retention of jurisdiction is mandatory.

The most recent statements of the Supreme Court upon the subject do not assert the limitation for which the appellants contend. In Charter Shipping Co. v. Bowring, 281 U. S. 515, 517, 50 S. Ct. 400, 401, 74 L. Ed. 1008, it is said: "The retention of jurisdiction of a suit in admiralty between foreigners is within the discretion of the District Court. The exercise of its discretion may not be disturbed unless abused. The Belgenland, 114 U. S. 355, 368, 5 S. Ct. 860, 29 L. Ed. 152; The Maggie Hammond, 9 Wall. 435, 457, 19 L. Ed. 772."

A similarly broad dictum is repeated in Langnes v. Green, 282 U. S. 531, 544, 51 S. Ct. 243, 248, 75 L. Ed. 520, where it is said that, although admiralty courts have complete jurisdiction over suits of a maritime nature between foreigners, "nevertheless, 'the question is one of discretion in every case, and the court will not take cognizance of the case if justice would be as well done by remitting the parties to their home forum.' "

But the appellants contend that these statements should not be given so broad a scope as they bear on their face. In the Bowring Case foreign law was involved, as the court noticed in a paragraph of its opinion which appears on page 518 of 281 U. S., 50 S. Ct. 400, 401: "Both the parties being British subjects and the present litigation, as well as the suit pending abroad, apparently involving the application of English law to the fund located there, it was for the District Court to say, as it did, upon a consideration of all the circumstances, whether it should decline 'to take cognizance of the case if justice would be done as well by remitting the parties to the home forum.' See The Maggie Hammond, supra, page 457 of 9 Wall., 19 L. Ed. 772."

Similarly, the dictum quoted from Langnes v. Green, supra, is followed by the statement: "So, while the courts of this country have and may entertain jurisdiction of actions between nonresident foreigners for

torts committed in a foreign country, they will exercise such jurisdiction in their discretion and only in special cases."

And it must be admitted that earlier opinions of the Supreme Court left open the question whether discretion to decline jurisdiction would exist if the tort was committed within the United States. In the Belgenland, 114 U. S. 355, at 363, 5 S. Ct. 860, 864, 29 L. Ed. 152, it is said that circumstances often exist which render it inexpedient for the court to take jurisdiction of "controversies between foreigners in cases not arising in the country of the forum"; and, again, at page 365 of 114 U. S., 5 S. Ct. 860, 865, that courts will use a discretion about assuming jurisdiction of "controversies between foreigners in cases arising beyond the territorial jurisdiction of the country to which the courts belong." See, also, The Maggie Hammond, 9 Wall. 435, 457, 19 L. Ed. 772.

The appellants have cited but one case which has applied the limitation on discretionary jurisdiction for which they contend. In The Apurimac, 7 F.(2d) 741 (D. C. E. D. Va.), Judge Groner seems to have held that jurisdiction was mandatory in a libel for negligent injury to a foreign seaman on a foreign vessel within an American port and so governed by local law. On appeal, however, the decree was affirmed on the ground that jurisdiction was discretionary, but discretion was not abused in retaining the suit. Heredia v. Davies, 12 F.(2d) 500 (C. C. A. 4). Whether we should feel at liberty, despite the language used in the recent Supreme Court decisions, to adopt the appellants' contention, we need not say. Concededly, the limitation exists only if the law of the forum is the law determining the rights and obligations of the parties.

█ If the collision had occurred on the high seas, there can be no doubt that the retention of jurisdiction would be a matter of discretion. When two vessels of the same nationality collide upon the high seas, the law enforced by the forum will be the law of the flag. The Scotland, 105 U. S. 24, 29, 26 L. Ed. 1001; The Eagle Point, 142 F. 453 (C. C. A. 3), cert. denied 201 U. S. 644, 26 S. Ct. 760, 50 L. Ed. 902. Under the terms of the Treaty between Great Britain and the United States Jan. 11, 1909 (36 Stat. 2448), the waters of the Great Lakes are equally free to citizens of either Canada or the United States, and we think collisions in those waters are to be dealt with as though on the high seas. The Eagle, 8 Wall. 15, 19 L. Ed. 365. That was a suit in rem for a collision between American vessels on the Canadian side of the international boundary. It was urged that Canadian law which gave no lien should apply, but the court held the suit should be tried according to the practice and principles of admiralty in this country irrespective of Canadian law. Mr. Justice Nelson, who wrote the opinion, distinguished a collision on the Great Lakes from a collision within a port. In the latter case there are local rules and usages which should be observed by all who enter the port. He called such cases "exceptional," and applied the admiralty law of the United States to a collision on the Canadian side of the waterway, as would have been done if the collision had been on the high seas. This case was carefully considered in The Avon, Fed. Cas. No. 680 (N. D. Ohio). That was an action in rem by an American ship against a British ship owned and registered in Ontario, for a collision on the Welland Canal, which is within Canadian territory and connects Lakes Erie and Ontario. The contention of the claimant was that the libel must be dismissed because Ontario law governed, being the lex loci delicti, and Ontario law did not give an action in rem. The court held to the contrary, and, in speaking of the case of The Eagle, supra, said: "It occurred in boundary waters, the vessels were all American, exercising an international right in circumstances where, without exception, it has ever been held the local laws were inapplicable." See, also, Thompson Towing & Wrecking Ass'n v. McGregor, 207 F. 209, 217 (C. C. A. 6); cf. The Kaiser Wilhelm der Grosse, 175 F. 215 (D. C. S. D. N. Y.); The West Cherow, 276 F. 585 (D. C. E. D. Va.). Consequently we think the rights and obligations of the litigants should be determined as though the collision had occurred on the high seas; that is, by the law of their common flag.

█ If, as we hold, the court had discretion whether or not to entertain jurisdiction, we cannot find any abuse of it in remitting the parties to their home forum. See The New Texas, 1926 A. M. C. 1514 (E. D. N. Y.); Goldman v. Furness Withy & Co., 101 F. 467 (D. C. S. D. N. Y.); The Iquitos, 286 F. 383 (D. C. W. D. Wash.); Charter Shipping Co. v. Bowring, supra.

Accordingly the decrees are affirmed.