**CARBON BLACK EXPORT, Inc.,**
**Appellant,**

**v.**

**THE SS MONROSA, Her Engines, Tackle, Etc., and Navigazione Alta Italia,**
**Appellees.**

**No. 16667.**

United States Court of Appeals
Fifth Circuit.

April 18, 1958.

298

Carl G. Stearns, Houston, Tex. (Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., Hill, Rivkins, Middleton, Louis & Warburton, New York City, of counsel), for appellant.

E. D. Vickery, George W. Renaudin, Houston, Tex., (Royston & Rayzor, Houston, Tex., of counsel), for appellees.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents the question whether the court below correctly declined jurisdiction (on the ground that the bills of lading vested exclusive jurisdiction in Italian Courts) of a libel for damages to and nondelivery of cargo, brought by an American citizen against the ship upon which the cargo was loaded and against the owner of the ship. In December, 1955, the libelant, Carbon Black Export, Inc., a manufacturer and exporter of carbon black, delivered to, and shipped on board, the SS Monrosa at Houston, Texas and New Orleans, Louisiana about 30,000 bags of carbon black. The shipments to three Italian ports

were covered by twenty-seven bills of lading, all on the same printed form.

Upon arrival of the Monrosa at the first Italian port, a portion of the shipment was delivered in damaged condition, and that destined for the other two Italian ports was never delivered at all. Libelant claimed damages in the sum of $110,000.00.

The libel was filed in the court below upon the return, some three months later, of the Monrosa to Houston, Texas and prayed that process issue against the Monrosa, her engines, tackle, etc., and that all persons claiming any right, title or interest in the steamship be cited to appear and that the steamship be condemned and sold to pay libelant's demands. Besides the *in rem* action against the Monrosa, Navigazione Alta Italia, the owner of the vessel, was made a respondent.

Six days after the filing of the libel respondent Navigazione filed a "Stipulation to Abide Decree," reciting that the *in rem* proceeding had been brought against the SS Monrosa and that Navigazione had filed a claim [1] to the vessel, and including this language: " * * * the parties hereto hereby consenting and agreeing, that in case of default or contumacy on the part of said claimant or its surety, execution may issue against their goods, chattels and land for the sum of $100,000.00." This stipulation, on which National Surety Corporation was surety, was conditioned "that the claimant above named shall abide by and pay the money awarded, including costs of court, by the final decree rendered in the cause by this court, or in case of an appeal by the appellate court."

About three months thereafter respondent Navigazione filed a motion praying that the court below decline ju-

---

[1]. The verified claim, filed on the same date, is in these words:

"Claim of Order

"And now appears Navigazione Alta Italia, for the interest of itself as owner of the SS Monrosa, her engines, etc., before this Honorable Court, and makes claim to the said SS Monrosa as the same is proceeded against at the instance of Carbon Black Export, Inc., and the said claimant, Navigazione Alta Italia, avers that it was at the time of the filing of the libel herein, and still is, the true and bona fide owner of the said SS Monrosa, her engines, etc.; wherefore, it prays to defend accordingly."

risdiction of the cause based upon the terms of the bills of lading, chiefly the following provision:

"Clause 27—Also, that no legal proceedings may be brought against the Captain or ship owners or their agents in respect to any loss of or damage to any goods herein specified, except in Genoa, it being understood and agreed that every other Tribunal in the place or places where the goods were shipped or landed is incompetent, notwithstanding that the ship may be legally represented there."

The motion set up grounds which respondents contended established the reasonableness of this provision. Affidavits were thereupon filed by one of the proctors for libelant opposing the motion, and one of the proctors for respondents

favoring it. The facts upon which the court below acted were set forth in the motion and the two affidavits.

The District Court filed a memorandum opinion [2] and entered a final decree reciting that it was "of the opinion that it has not been shown that the agreement in the bills of lading between Libellant and Respondents to sue or be sued only in the Courts of Genoa, Italy, is unreasonable," and granting the motion of respondents to decline jurisdiction and canceling and discharging the stipulation to abide decree filed by the respondent-claimant. Libelant appeals, setting forth its grounds in detail; [3] and respondents point to the motion to decline jurisdiction filed by Navigazione, and the affidavit of its proctor filed as representative of the "Respondents" as spelling out their contentions that the action of the court below was correct.[4]

2. "Since the agreement (bills of lading) between Libelant and Respondents to sue or be sued only in the Courts of Genoa, Italy, and because it is not shown that said agreement is unreasonable, this Court will decline jurisdiction of this case; conditioned, however, that Respondents shall, within fifteen (15) days from date hereof, deliver to Libelant a good and sufficient bond, in the principal sum of one hundred thousand dollars ($100,000.00) guaranteeing the payment of any final judgment that may be had in favor of Libelant against Respondent's ship, The SS Monrosa, * * * See Wm. H. Muller & Co. v. Swedish American Line, Ltd., [2 Cir.] 1955, 224 F.2d 806, certiorari denied 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 * * *"

3. That it was a citizen of the United States; that respondent Navigazione operated a fleet of cargo ships between Houston and other Gulf ports and Italian and other Mediterranean ports and maintained regularly scheduled service between them; that the Monrosa was in port at Houston from April 7th to April 10th, 1956; that the bills of lading were printed in English; that a general appearance had been entered on behalf of respondents constituting a waiver of the claim against the court's jurisdiction; that Clause 27 of the bill of lading did not bar suit *in rem* against the Monrosa; that the bills of lading provided that the Carriage of Goods by Sea Act of the United States, 46 U.S.C.A. § 1300

et seq., would form a part of the bills of lading and the United States Courts were in the best position to apply them; that libelant had the choice of forum and its choice should be respected; that the bills of lading were issued in the United States and partly performed here; that testimony of the condition of the carbon black when loaded and of the Monrosa at the time of loading was available only in the United States; and that it had endeavored to take the depositions of the Monrosa's crew while it was docked at Houston, but that such effort had been arrested by the court below at the instance of respondents; and that under the circumstances Clause 27 was illegal and that it had no application under the facts set forth.

4. That the bills of lading provided that they were governed by the law of the steamer and the regulations of the Italian Commercial Code; that the vessel was owned by a Genoese corporation and its witnesses were Italians residing in Italy with no expectation of being in the United States at the time of trial; that the damage to the cargo was surveyed upon arrival at Genoa and the witnesses with respect to such damage were located there; that the market value of the cargo should be determined as of the market price at the port of destination; that the seaworthiness of the vessel before and during the voyage could be proved only by Italian witnesses; that the captain of the Monrosa had suffered

We agree with libelant that the court below was in error in granting the motion to deny jurisdiction under the facts of this case. Particularly is this true with respect to the proceeding *in rem* against the ship itself. As to this feature of the case, the decision of the Second Circuit in Muller [5] has no application. The ship there involved had been lost at sea and there was no *in rem* action. The clause of the bill of lading there involved [6] is broader than that in the case before us. The language there encompassed "any claim against the carrier arising under the bill of lading," while the language of the exclusionary clause here was confined to legal proceedings brought against the Captain or ship owners or their agents. There is nothing in Clause 27 which has any tendency to establish that the parties intended that it should be made applicable to an *in rem* proceeding against the ship itself.

What we said recently in Motor Distributors, Ltd. v. Olaf Pedersen's Rederi A/S [7] is persuasive here, although we were considering the general question of whether justice would be better subserved by retaining or declining jurisdiction rather than the terms of an exclusionary clause:

"Moreover, something deeply significant in the whole field of maritime law is here at stake. With respect to ocean-going carriers it seems that one of the most universally recognized rules of law is that which gives the right to libelant, possessing a maritime lien against a vessel, to proceed in rem in the jurisdiction where the vessel is found."

Finding no authorities to the contrary, and feeling that the exclusionary clause relied on by respondents does not in terms apply to *in rem* proceedings, we hold that the court below was in error when it granted the motion to decline jurisdiction of the *in rem* feature of the libel. [8]

We are of the opinion also that the court below should have denied the motion of respondent Navigazione to decline personal jurisdiction as to it. In essence, the motion was based upon Clause 27 as buttressed by the doctrine of forum non conveniens. Any consideration of such a question starts with the universally accepted rule that agreements in advance of controversy whose object is to oust the jurisdiction of the

a heart attack and was no longer aboard the vessel; that all of the cargo was discharged at Genoa, the remainder being damaged to such an extent that it could not be delivered to the other Italian ports, and the witnesses having knowledge thereof were situated in Genoa; that Italy has been a maritime nation for centuries and its courts were familiar with the U. S. Carriage of Goods by Sea Act and were capable of giving effect to it; and that because of the provisions of the bill of lading and also under the doctrine of forum non conveniens, the court below correctly declined jurisdiction.

5. 224 F.2d 806, certiorari denied 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793. Neither did the other two cases from the same Circuit so heavily relied upon by appellees, the Bio Bio case [Murillo Ltda. v. The Bio Bio] 227 F.2d 519, and the Geisha case [Cerro De Pasco Copper Corp. v. Knut Knutsen, O. A. S.] 187 F.2d 990,

involve actions *in rem*. Appellees cite no authority wherein an exclusionary clause similar to that here involved has been held to apply to an action *in rem*.

6. "Jurisdiction. Any claim against the carrier arising under this bill of lading shall be decided according to Swedish law, except as provided elsewhere herein, and in the Swedish courts, to the jurisdiction of which the carrier submits himself."

7. 1957, 239 F.2d 463, 467.

8. It is of no importance that respondent Navigazione posted a bond to release the Monrosa. With respect to that action appellees say in their brief: " * * * in order to preserve the security which appellant had acquired by its seizure of the vessel * * *, the court conditioned its order on delivery by appellees to appellant of a good and sufficient bond * * *."

courts are contrary to public policy and will not be enforced.[9]

We do not find it necessary to espouse or reject the position taken by the Court of Appeals of the Second Circuit in the cases mentioned above, which are relied upon as marking a departure from this general rule.[10] The facts before that Court in those cases were, in each instance, materially different from those before us. In addition to those already discussed, it is important to note that the contracts of carriage here were made in the United States and were partially performed here, that the bills of lading specifically adopted the Carriage of Goods by Sea Act of the United States as part of their provisions and were printed in English, tending to indicate that the parties recognized that the courts of the United States were in a good position to pass upon the rights of the parties to them. It is further noteworthy that the testimony of the crew of the Monrosa was sought by libelant and resisted by respondents when the crew were in Houston; and, finally respondents invoked the jurisdiction of the court below in general terms and rested upon this action several months before challenging that jurisdiction by its motion.

■ As heretofore pointed out, respondents pitch their argument to a considerable extent upon the doctrine of forum non conveniens, recognizing that Clause 27 alone did not provide a firm basis upon which to stand. The rule governing application of that doctrine is thus expressed by the Supreme Court in Gulf Oil Corp. v. Gilbert, 1946, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

The judgment of the court below granting the motion to decline jurisdiction and vacating and discharging the stipulation to abide the decree of the court below is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

**9.** The rule is thus epitomized in the headnote of the article on Contracts, 17 C.J.S. § 229, page 603: "Contract provisions intended to oust courts of their jurisdiction in advance, as distinguished from provisions merely imposing conditions on the exercise of the right to sue, are void. This rule has been frequently considered in determining the validity of contracts as to venue, periods of limitation, notice or demand, and evidence."

And see also 14 Am.Jur., Courts, § 196, pp. 389–390, which thus summarizes the rule: "Both in England and the United States it has been decided in a great number of cases, and conceded in an equally large number of other cases, to be settled law that the jurisdiction of the courts cannot be ousted by the private agreement of individuals made in advance, that private persons are incompetent to make any such binding contracts, and that all such contracts are illegal and void as against public policy."

Cited to both texts are a number of decisions of the Supreme Court of the United States; and cf. our decision in Burt v. Isthmus Development Co., 1955, 218 F.2d 353, 356, certiorari denied 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254.

**10.** Those cases do not purport to construe such a provision as Clause 27 as creating an absolute right but one to be accorded if all of the facts of a given case make it reasonable to give it effect. Several District Courts have considered the cases and have refused to decline jurisdiction despite the presence of similar clauses, e. g., Chemical Carriers, Inc., v. L. Smit & Company's etc., S.D.N.Y.1957, 154 F.Supp. 886; Sociedade Brasileira, etc. v. S.S. Punta Del Este, etc., D. of N.J.1955, 135 F.Supp. 394; and St. Paul Fire & Marine Ins. Co. v. The Republica de Venezuela, S.D.N.Y.1952, 105 F.Supp. 272.