**POSEIDON SCHIFFAHRT, G.m.B.H.,**
**Plaintiff,**

v.

**The M/S NETUNO, Her Engines, Tackle,**
**Apparel, etc., Defendant.**

**Civ. A. No. 2866.**

United States District Court,
S. D. Georgia,
Savannah Division.

Jan. 6, 1972.

George H. Chamlee, Lawton, Sipple & Chamlee, Savannah, Ga., A. Stuart Hyndman, McMaster, Meighen, Minnion, Patch & Cordeau, Montreal, Canada, for plaintiff.

Spencer Connerat, Jr., Connerat, Dunn, Hunter, Houlihan, Maclean & Exley, Savannah, Ga., Raymond A. Ballard, Foster, Meadows & Ballard, Detroit, Mich., for defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

LAWRENCE, Chief Judge.

This libel involves the collision of two vessels on the early morning of August 27, 1971, in the channel of the St. Clair River at the south end of Lake Huron. The *Transmichigan* which is of German registry is owned by Poseidon Schiffahrt. She was on a voyage from Hamburg to Milwaukee. The *Netuno*, a Brazilian motorship, was bound from Bay City to Detroit. At issue is whether or not this Court should exercise its discretion in favor of retaining jurisdiction in a case where similar litigation between the same parties is pending in the admiralty courts of Canada.

Shortly after the collision an in rem and in personam action was brought by the owner of the *Netuno* against the *Transmichigan* in the United States District Court for the Eastern District of Michigan. The complaint was not served and the in rem feature of the litigation was never perfected. Apparently the proceeding was merely a vehicle for deposing, pursuant to an *ex parte* order, the crew of the *Transmichigan* and the two pilots. The action was dismissed on September 20, 1971.

On September 3, 1971, a libel action was filed by Poseidon as owner of the *Transmichigan* in the Federal Court of Canada at Montreal where the *Netuno* was then under repair. Damages to the German vessel and her owner were estimated at approximately $1,000,000. The suit was denominated an "Action in Rem" and there was a prayer for condemnation of the *Netuno*. A "Statement of Defence" and a counterclaim were filed by the defendant.

On September 27, 1971, a third libel proceeding was filed at Savannah where the *Netuno* had put following her departure from Montreal.[1] In the proceeding in this Court the *Netuno* was not seized in view of a waiver by the owner of warrant for arrest in action in rem. It was stipulated that it would have the same effect as though there had been service of such warrant.

Defendant moves to dismiss Poseidon's action on the ground that it had commenced litigation which is pending in The Federal Court of Canada and which involves the same parties and issues.

Poseidon replies that both vessels were carrying American cargo; both were bound to American ports; the pilots were American, and the collision occurred in American waters. Although libellant selected the Canadian jurisdiction, it says that there is no necessary

---

1. A fourth libel was brought against the *Netuno* in New York by cargo owners and underwriters to recover for damage to cargo aboard the *Transmichigan*. The case is pending in the United States District Court for the Southern District of New York.

or practical reason of trying the case there and that the only interests involved are Brazilian, German and American. It also contends that the action is not in rem. Counsel for *Netuno*'s owner argue that the collision occurred in Canadian waters; that the witnesses as to damages and repairs reside in Canada, and that the suit brought in the Canadian admiralty court is one in rem.

The defendant's motion to dismiss was orally argued on November 29th. Briefs have been furnished and counsel for the parties have filed affidavits supporting and contesting the motion.

In insisting that this Court take jurisdiction of the libel brought here Poseidon lays store by The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 and Motor Distributors, Limited v. Olaf Pedersen's Rederi A/S owner of the Sunny Prince, 239 F.2d 463 (5 Cir.); cert. denied, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed. 2d 760. In *The Belgenland* the Supreme Court held that in the case of a collision on the high seas between vessels of foreign nationality jurisdiction of our courts is beyond dispute. Expediency as to its exercise is all that matters: Assumption thereof depends largely on the discretion of the court of first instance. Jurisdiction should be entertained by the latter "unless special circumstances exist to show that justice would be better subserved by declining it."[2]

In *Motor Distributors, supra*, a district court in Florida dismissed a libel in rem brought there against a foreign ship by nationals of foreign countries for damages arising out of a collision at sea between a German and a Norwegian vessel. Reading *The Belgenland* as requiring the denial of jurisdiction unless

it should work an injustice, the lower court found that no such showing had been made. The Fifth Circuit reversed. It held that the correct rule is that jurisdiction must be assumed unless to do so would produce an injustice.

In neither of the cases referred to was there the element of a libel pending in a foreign jurisdiction involving the same parties and the same subject matter. Nor was there such a situation in the other cases cited by the Fifth Circuit Court of Appeals in support of the ruling in *Motor Distributors*.

A case bearing greater resemblance to the one *sub judice* is *The Kanto Maru* (9 Cir.) 112 F.2d 564. It involved a collision in the territorial waters of Japan between a vessel of Japanese and a vessel of Norwegian nationality. The *Kanto Maru* owners brought a libel proceeding against the *Ingeren* in an admiralty court in Japan. No cross libel was filed by respondent but consent was given to such a procedure. Subsequently, while the action in Japan was pending, the owners of the *Ingeren* filed a libel in rem in a district court in California. The district judge dismissed the proceeding, stating that the question of liability could be properly and promptly heard in the admiralty courts of Japan. The Ninth Circuit affirmed. "While it is true that there are some reasons advanced by the libelant which would point to the desirability of retaining jurisdiction there are many facts stated by the trial court in the findings upon which it based its decision which tend to fully justify that decision. . . ." *The Kanto Maru, supra*, 112 F.2d 566.

■ The rule as to the effect of the pendency of a similar action between the

---

2. This was an affirmation of what Chief Justice Taney had maintained in a dissenting opinion filed at the December Term, 1857, in Taylor v. Carryl, 61 U.S. 583, 20 Howard 583, 611, 15 L.Ed. 1028. The dissent was concurred in, incidentally, by another accomplished admiralty judge, Mr. Justice James M. Wayne of Savannah who in Waring v. Clarke, 46 U.S. 441, 5 Howard 441, 12 L.Ed. 226 extended the

admiralty jurisdiction from the high seas into tidal rivers. That decision was a precursor to The Propeller Genessee Chief, 53 U.S. 443, 12 Howard 443, 13 L.Ed. 1058 and Wayne's opinion in Fretz v. Bull, 53 U.S. 466, 12 Howard 466, 13 L. Ed. 1068 where the jurisdiction was extended, respectively, to the Great Lakes and to non-tidal navigable streams.

parties in another jurisdiction applies in admiralty. Where the proceeding is in rem it is said that the right of the first court to assume possession and control of the property is exclusive. 2 Am.Jur. 2d Admiralty § 140; 2 C.J.S. Admiralty § 83, p. 164. The rule has been held to be different where the pending action in a foreign country is in personam. The Kongsli, 252 F. 267. In Iperia-Svalen, 1938 A.M.C. 778 (E.D.,N.Y.,1919) the *Iperia* was arrested in the Azores following a collision at sea with the *Svalen*. Bond was given for her release. Subsequently, the *Iperia* was attached in rem in a libel proceeding in the Eastern District of New York. The district judge ruled that if the first arrest was pursuant to an action in rem authorized by Portuguese law, the ship could not be arrested a second time in the United States. There was no proof, however, that such a proceeding was available under the law of Portugal. Defendant's motions were denied after libellant expressed a willingness to discontinue the action which was pending in the Azores.

■■ The parties are at odds as to whether the proceeding in Canada is in rem. It is so denominated but the *Netuno* was not seized. An application for warrant of arrest was issued but not served. Under Canadian law a vessel which has been attached cannot be moved without court approval until bail is given. The "Statement of Claim" (which is the originating document) was served on the ship. But this does not constitute an arrest. There is a procedure by which issuance and service of a warrant for arrest may be forestalled through a "Notice for Caveat Warrant." On September 20, 1971, counsel for the underwriters of the *Netuno*, following negotiations, notified Poseidon that within three days after being required to do so bail would be given in the amount sued for or in such lesser sum as the court might fix. Such notice is not the equivalent of bail. It is unilateral and may be withdrawn at any time. It is effective only for six months. No

bail has been fixed in the proceeding at Montreal.

In *The Kongsli, supra,* a British and a Norwegian steamship collided at Oran and an action was filed against the latter in the French courts in Algeria. The Norwegian vessel was seized but was released from attachment upon the owner furnishing a letter of indemnity. Before the litigation in that country had proceeded to trial and judgment the British owners libeled the *Kongsli* in the Federal District Court in Maine. The district judge ruled that the Algerian action was not in rem in the sense of such proceedings under English and American law and that the letter of indemnity did not constitute a bond discharging the lien and substituting for the ship. The Algerian suit being in personam, jurisdiction was retained.

■ I do not think the Canadian proceeding is a true in rem action. If there had been an arrest of the vessel, followed by bail, the fact might be conclusive as to non-retention of jurisdiction. However, whatever its nature may be, the pendency of the twin action in Canada is relevant to proper exercise of discretion. In Charter Shipping Company, Limited v. Bowring, Jones & Tidy, Limited, 281 U.S. 515, 50 S.Ct. 400, 74 L.Ed. 1008 the district judge had declined jurisdiction under similar circumstances. The Circuit Court of Appeals for the Second Circuit reversed. Certiorari was granted. In reversing the ruling the Supreme Court said, "Both of the parties being British subjects and the present litigation, as well as the suit pending abroad, apparently involving the application of English law to the fund located there, it was for the District Court to say, as it did, upon a consideration of all the circumstances, whether it should decline 'to take cognizance of the case if justice would be done as well by remitting the parties to the home forum.'"

Germany, Brazil and Canada are parties to the Brussels Convention of 1910 and that of 1952. The latter sets forth

guidelines in collision cases with respect to jurisdiction, which may be established in the place where arrest has been effected of the defendant ship or where arrest could have been effected and bail or other security has been furnished. A claimant is prohibited from bringing any "further action against the same defendant on the same facts in another jurisdiction, without discontinuing an action already instituted." Article 1(1) and (3). Benedict on Admiralty (7th Ed.), vol. 6, p. 35.

■ The United States is not a party to the Brussels Conventions. Treaty or contract stipulations do not deprive American courts of jurisdiction in admiralty cases. Benedict on Admiralty (6th Ed.), vol. 1 § 84; Anastasiadis v. S. S. Little John (5 Cir.) 346 F.2d 281, 282ff.; Carbon Black Export, Inc. v. The S. S. Monrosa (5 Cir.) 254 F.2d 297. It has been held that the Brussels Convention of 1910 is the governing law in American courts in respect to collisions at sea between foreign vessels and owners who are the subjects of the signatory nations. See The Mandu (E.D., N.Y.), 15 F.Supp. 627; 21 F.Supp. 372; 102 F.2d 459 (2 Cir.); 114 F.2d 361. This is a fog-shrouded area of American admiralty law and it is better to steer clear of it. In view of the direction I give the case, it is unnecessary to reach the question of the effect on this Court of the Brussels Convention of 1952. Nonetheless, the fact that the West German Republic, Brazil and Canada have bound themselves by treaty as to jurisdiction is a pertinent factor in the exercise of this Court's discretion in determining "what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520.

The libel at Savannah and the one pending in Canada not only involve identical parties and the same basic issues of law and fact but the navigational rules are the same in both jurisdictions. Of course, there are variances in the law that one or the other court would apply.[3] The Supreme Court of the United States has said in this respect, "If the libelants are entitled to have applied the law of the United States in respect to the liability, the Canadian courts will, it must be assumed, give effect to it." Canada Malting Co., Ltd. v. Paterson Steamships, Ltd., 285 U.S. 413, 424, 52 S.Ct. 413, 416, 76 L.Ed. 837.

The defendant argues that Canada is the most convenient forum since witnesses familiar with the damage and repair features live there. But the *forum non conveniens* argument ignores the statute permitting change of venue for convenience of witnesses and parties. Under 28 U.S.C.A. 1404(a), this case could be transferred to Detroit where the pilots reside, near which the collision occurred and where the owner of the *Netuno* brought the initial libel.

■■ Libellant's conceded motive in seeking relief in the admiralty courts of this country in preference to prosecuting the action filed at Montreal is that in a proceeding for limitation of liability the value affixed to the *Netuno* will be greater in the United States than in Canada.[4] Poseidon complains that the

---

3. For example, the rule varies in the two jurisdictions as to award of damages in cases of mutual fault. Under Article 4 of the Brussels Convention of 1910 if both vessels are in fault, the liability of each shall be in proportion to the degree of the faults. That rule prevails in Canada. See Canada Malting Co., Ltd. v. Paterson Steamships, Ltd., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837. In this country where both parties are at fault damages are equally divided irrespective of the degree thereof. Robinson, Handbook of Admiralty Law in the United States (1939) § 115.

4. In the United States a shipowner petitioning for limitation of liability shall deposit with the court a sum equal to "the value" of the vessel. 46 U.S.C.A. §§ 183, 185. Usually the amount of the bond is fixed by stipulation of the parties after appraisal. If a claimant disputes the amount of the deposit or the security

liability of the *Netuno* would be limited to approximately $640,000 on a total claim of $1,000,000. The fact, however, that plaintiff would obtain greater security in this Court because of the more liberal valuation standard is not a determinant factor. Where an American libellant in an American admiralty court is relegated, under principles of *forum non conveniens*, to the courts of a foreign country to enforce a claim, the existence of equal security there is significant. See Swift & Company Packers et al. v. Compania Colombiana Del Caribe, S. A., et al., 339 U.S. 684, at 697f, 70 S. Ct. 861, 94 L.Ed. 1206. But because a foreign shipowner who has libelled another foreign vessel in Canada discovers that Canadian cooking is not to his liking gives no prerogative to try the fare on this side of the border. "That the rule in this court is more favorable to the cargo owners [than in Canada] is insufficient reason for retaining jurisdiction." Canada Malting Co., Limited v. Paterson Steamships, Limited, D. C., 49 F.2d 802, at 803; affirmed 2nd Cir.

51 F.2d 1007; 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837. "To bring an action in this district in the hope of obtaining a more favorable rule of law than now obtains in the district where [the shipowners] first elected to sue is forum shopping with a vengeance." Intercontinental Transportation Co., Inc. and Maritime Overseas Corp. v. Sea-Land Services, Inc., 1969 A.M.C. 1676 (S.D.N.Y.).[5]

Whether the collision between the *Transmichigan* and the *Netuno* took place in the territorial waters of Canada or of the United States is in sharp dispute. It occurred on or close to the International Boundary.[6] I agree with counsel for Poseidon that the place of the collision is immaterial to the disposition of defendant's motion to dismiss. Whatever significance the site may have in the Canadian court,[7] the resolution of such issue does not settle whether jurisdiction should be retained by this Court. Under any view of that question, it is within the discretion of the District Court of the United States to decline to assume jurisdiction over the controver-

---

given by plaintiff, the court causes a "due appraisal" to be made and thereupon orders an increase or reduction. F.R.C.P. Supplemental Rules F(7). Canada, Brazil and the West German Republic are parties to the Brussels Convention of 1957 which deals with limitation of liability. See 1957 A.M.C. 1971ff. Article 3 provides that the limit of liability where there are property claims is an aggregate amount of 1000 francs for each ton of the ship's tonnage. The Canadian statute adopts the standard of 1000 gold francs per ton. A gold franc means "a unit consisting of five and one half milligrams of gold of millessimal fineness 900." Revised Statutes, Chap. S-9 § 647(1) and (2) (f). At the September, 1971, rate of foreign exchange this is equivalent to around $70.00 per ton in American currency. The net tonnage of the *Netuno* is 9,640 tons.

5. In that case the defendant shipowners impleaded the stevedore-employer of an injured longshoreman in a suit brought by the latter in Puerto Rico. Following a settlement and while the third-party action was pending in that jurisdiction, the shipowners filed a similar proceeding

against the stevedore in New York seeking to recover the amount paid plaintiff by way of settlement.

6. Libellant contends that the collision was due to a helm error by the *Netuno* in using a port instead of starboard rudder at a bend in the channel. Depositions relating to the point of the collision have been taken. Plaintiff concludes that at least the bow of the *Transmichigan* and virtually the whole length of the *Netuno* (800 feet) must have been in United States waters at the time of the collision. Counsel for the *Netuno* contend that it occurred in Canadian waters. The Master of the *Netuno* filed a report with the United States Coast Guard in which the place of collision was given as the "American side of channel above Blue Water Bridge."

7. Counsel for the owner of the *Netuno* call my attention to a 1915 decision by the Supreme Court of Canada which indicates that in a collision of an American and a Canadian barge in the Great Lakes the statutory limitation of a shipowner's liability would not be "lex fori." See Ontario Gravel Freighting Company v. The Ships "A. L. Smith" and "Chinook", 51 Supreme Court of Canada Reports 39.

sy. Canada Malting Co., Ltd. v. Paterson Steamships, Ltd., *supra*, 285 U.S. 419, 420, 52 S.Ct. 413, 76 L.Ed. 837.

As earlier noted, the owner of the *Netuno* has filed a counterclaim in the Montreal proceeding and it is pending there. Poseidon proposes that if it should be required by this Court to discontinue the action in Canada it will stipulate that defendant's counterclaim will not be prejudiced. But what if, and presumably it will do so, the owner of the *Netuno* objects?[8] It would be difficult to conceive of a more awkward stance for litigation to take than for the defendant's counterclaim to be tried in Canada and the plaintiff's libel in the United States.

The fact of American cargo being aboard the vessels is a relevant consideration (*The Kanto Maru, supra*; Canada Malting Co., Ltd. v. Paterson Steamships, Ltd., *supra*) but it is not controlling. As earlier noted, the claim of the owners and underwriters of the damaged cargo aboard the *Transmichigan* is the subject of a libel pending in the Southern District of New York.

Maritime cases in which federal courts have applied the *forum non conveniens* rule include: Industria E. Comercio De Minerios v. Nova Genuesis Societa (4 Cir.), 310 F.2d 811; Iberian Tankers Co. v. Terminales Maracaibo, C.A.D.C., 322 F.Supp. 73; Transomnia G. m. b. H. v. M/S TORYU, D. C., 311 F.Supp. 751; Fitzgerald v. Westland Marine Corporation (2 Cir.), 369 F.2d 499; Kapatsos v. the M/V BARLBY, 238 F.Supp. 654; Camarias v. the M/V LADY ERA, D. C., 318 F.Supp. 379; Noto v. CIA Secula di Armanento, D. C.,

310 F.Supp. 639, and Mitsubishi v. Kawasaki, 1960 A.M.C. 151.

The rule "had its birth in admiralty and later was extended to other causes under federal jurisdiction." Noto v. CIA Secula di Armanento, *supra*, 310 F.Supp. at 648. While the two principles overlap each involves the exercise of discretion with due regard to what is equitable under the law and the facts. I find that "special circumstances" exist, within the holding in *The Belgenland*, that justify denial of aid to the German suitor in this case. Taken in the round, the considerations favoring nonentertainment of jurisdiction outweigh those in support of retention. Justice is as certain in the admiralty courts in Canada as here and it appears to be swifter.[9] No injustice will result from abstention. There is also the matter of decent regard for international judicial comity in a case where a court of a neighboring country, versed in traditions of English admiralty law, first obtained and is presently exercising jurisdiction over an identical action. Any different disposition could produce the unedifying spectacle of a race by the parties (with competition being forced upon the two courts) to be the first to obtain final judgment.[10]

The libel will be dismissed. However, such dismissal will not become effective until bail is fixed and furnished in the action in Canada. Whether the jurisdiction of the admiralty courts there in collisions between foreign vessels is mandatory or merely discretionary I do not know. It is said of English maritime law that "the Admiralty Court never refused to entertain an action merely because

---

8. Under Rule 41(a) (2), F.R.C.P., where there is a counterclaim, an action against the defendant cannot be dismissed on plaintiff's motion over objection of the defendant "unless the counterclaim can remain pending for independent adjudication by the court." In Canada it appears to be the rule that a dismissal of a libel leaves the counterclaim pending.

9. The system of Federal Courts of Canada was established within the past year and

I am informed that there is no backlog of cases as there is in this District.

10. "It is the prevailing doctrine of our courts that the pendency of an action in a foreign court is no bar to a suit in the federal court. If a definitive judgment has been rendered in such suit in the foreign court, it is, of course, otherwise." *The Kongsli, supra*, 270.

both ships were foreign. . . ." Marsden's Collisions at Sea (9th Ed.), 210. Canadian courts have the same jurisdiction over the like places, persons, matters and things as the High Court of Admiralty, including the trial of a maritime question of collision between foreign vessels on the Great Lakes. The D.C. Whitney v. St. Clair Navigation Co. (1907), 38 Reports of the Supreme Court of Canada 303. Should The Federal Court of Canada, for any reason, decline jurisdiction, the action pending in Savannah will be transferred to the Eastern District of Michigan. Meanwhile, further proceedings in this Court are stayed.