**POSEIDON SCHIFFAHRT G.M.B.H.,**
**Plaintiff,**

v.

**The M/S NETUNO, her engines, tackle,**
**apparel, etc., Defendant.**

**Civ. A. No. 2866.**

United States District Court,
S. D. Georgia,
Savannah Division.

Aug. 1, 1973.

George H. Chamlee, Lawton, Sipple & Chamlee, Savannah, Ga., for plaintiff.

Spencer Connerat, Jr., Connerat, Dunn, Hunter, Houlihan, Maclean & Exley, Savannah, Ga., Raymond A. Ballard, Foster, Meadows & Ballard, Detroit, Mich., for defendant.

## SECOND ORDER

LAWRENCE, Chief Judge.

This admiralty case grows out of a collision on Lake Huron between a Brazilian and a German vessel on or near the International Boundary Line of Canada and the United States. I dismissed the action for lack of jurisdiction. See 335 F.Supp. 684.

On appeal the case was remanded "for the court to reassess its conclusion not to exercise jurisdiction using the proper legal standard," as set forth in Motor Distributors, Ltd. v. Olaf Pedersen's Re-

deri A/S, 5 Cir., 239 F.2d 463. See The Netuno, 474 F.2d 203, at 205.

In The Belgenland, 114 U.S. 355, 367, 5 S.Ct. 860, 866, 29 L.Ed. 152 the Supreme Court said that the subject of jurisdiction had been before our admiralty courts frequently and "there has been but one opinion expressed, namely, that they have jurisdiction in such cases, and that they will exercise it unless special circumstances exist to show that justice would be better subserved by declining it." In *Motor Distributors, supra,* the Fifth Circuit interpreted this language to mean that, "Instead of the rule being, as the trial court here stated, that jurisdiction should be denied unless such denial would work an injustice, the rule is, rather, that jurisdiction should be taken unless to do so would work an injustice."[1] The same test was applied by the Court of Appeals in remanding this case for reassessment of the conclusion reached by this Court.

To gloss the gloss of the Fifth Circuit I take this to mean that a libel must be entertained by the admiralty courts of the United States in a case involving collisions of vessels of foreign nationality unless the defendant ship is able to show that to do so would work, as to such owner, "an injustice" because of the "special circumstances."

Counsel for the *Netuno* owners state:

"If the question of liability is tried in the Federal Court of Canada, the Netuno interests will be able to assert, by way of defense, the navigational faults of the Transmichigan, and, if not successful, would then still be entitled to claim limitation of liability. It is estimated that the limitation fund under Canadian law would be approximately $640,000.00 whereas claims have been asserted in excess of $1,000,000.00. Consequently, limitation of liability under Canadian law is very important to the Netuno inter-

ests. On the other hand, limitation of liability under United States law is worthless to the Netuno interests because it is based on the value of the vessel after the accident and that value is far in excess of the amount of the claims."

Defendant says that the cost of trying the case at Savannah (where not a single witness resides) would represent considerable additional expense to it.

As to the pending Canadian litigation by the same plaintiff in the Federal Court of Canada filed prior to the libel *in rem* in this Court, counsel for the *Netuno* owners inform me that the case "is for all practical purposes, ready for trial and a trial date in the very near future could be appointed." They complain:

"If this case proceeds to trial in Savannah, it will probably lead to multiple litigation because of the pending litigation in the Federal Court of Canada at Montreal, Quebec, Canada. Defendants have filed their counter-claims in that action and intend to proceed with that litigation. The only reason that litigation has not proceeded at this time, is because the *Netuno* interests are in a defense position initially and the *Transmichigan* interests have not initiated the offense."

The *Netuno* interests also rely on the Brussels Convention of 1952 which is binding on both German and Brazilian vessels. It provides that actions for collisions must be brought (a) in a court where defendant resides or has a place of business; (b) where the defendant vessel has been arrested or where arrest could have been effected and bail or security has been furnished, or (c) before the Court of the place of collision if in inland waters. Article 1 (1)(a), (b), (c). The claimant may decide in which of these tribunals the proceeding shall be instituted but it may not "bring a further action against the same defend-

---

1. In its Order of January 6, 1972, this Court said that jurisdiction is to be taken "unless special circumstances exist to show that justice would be better sub- served by declining it." I found that there were "special circumstances" justifying denial of aid to the German suitor in this case.

ant on the same facts in another jurisdiction, without discontinuing an action already instituted."[2] Brussels Convention of 1952, Article 1 (2), (3); 6 Benedict on Admiralty (7th ed.), pp. 35–37.

In its 1972 Order this Court referred to the Convention. However, in the light of Carbon Black Export, Inc. v. The S. S. Monrosa, 254 F.2d 297 (5th Cir.) it was deemed expedient to steer clear of the foggy area of our admiralty law respecting deference to foreign-forum stipulations. See 335 F.Supp. at 688. Since the remand of this case, the Supreme Court has decided The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 which went up from the Fifth Circuit.[3] In that case the highest Court held that the forum-selection clause involved was binding on the contracting parties unless respondent meets the heavy burden of showing that its enforcement would be unreasonable or unjust.[4]

Counsel for Poseidon Schiffahrt point out that the fact that the cargo damage rule or limitation statutes or laws of a foreign forum are more favorable to the defendant shipowner than the maritime law of the American court is not good reason to decline jurisdiction. The Western Farmer, 210 F.2d 754, 757 (2nd Cir.); The Mandu, 102 F.2d 459 (2nd Cir.); Volkswagen of America, Inc. v. S/S Silver Isle, 257 F.Supp. 562, 564 (N.D.Ohio). Such statutes are part of the remedy and the governing law is that of the forum.

The real inquiry, plaintiff insists, should be directed to whether the American court selected by the libellant is in fact "a neutral forum." Such, counsel say, is the rationale of *Belgenland* and the question of "injustice" must be assayed in that context.

The Brussels Convention of 1952 deals with civil jurisdiction in matters of collision. An action between seagoing vessels can only be "introduced" (other than at defendant's place of business or residence and the place of collision if in a port or in inland waters) "before the Court of the place where arrest has been effected of the defendant ship . . . or where arrest could have been effected and bail or other security has been furnished." Article 1(c).

I expressed the view in my first decision that the *Netuno* was not "seized" in Canada and that the service on the vessel of the "Statement of Claim" and defendant's written assurance, after negotiation, that bail would be given in the amount sued for or in such lesser sum as the court might fix is not the equivalent of bail. See 335 F.Supp. 687. I further commented that the proceeding

2. As I remarked in the first decision in this case, "In Canada it appears to be the rule that a dismissal of a libel leaves the counterclaim pending." 335 F.Supp. p. 690, n. 8. Plaintiff has not dismissed its pending case in that jurisdiction.

3. See the *en banc* decision of that Court in 446 F.2d 907. The majority (as in the panel decision, 428 F.2d 888) rested its holding on *Carbon Black, supra.* The six dissenting judges thought it "incredible that a court should fail to honor an agreement between a foreign corporation and a domestic corporation to settle their contractual disputes in a neutral forum according to the law of a neutral country long used to its courts' settling admiralty disputes." The Supreme Court said, "We hold, with the six dissenting members of the Court of Appeals, that far too little weight and effect was given

to the forum clause in resolving this controversy." 407 U.S. at p. 8, 92 S.Ct. at p. 1912.

4. "Forum-selection clauses have historically not been favored by American courts. Many courts, federal and state, have declined to enforce such clauses on the ground that they were 'contrary to public policy,' or that their effect was to 'oust the jurisdiction' of the court. Although this view apparently still has considerable acceptance, other courts are tending to adopt a more hospitable attitude toward forum-selection clauses. This view, advanced in the well-reasoned dissenting opinion in the instant case, is that such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. 9–10, 92 S.Ct. 1913.

was not a true *in rem* action. With that observation the Appellate Court agreed.[5]

■ The owners of the *Netuno* stress Article 1(c). They contend that the arrest could have been effected at Montreal and bail or other security furnished there. This is quite true but the language of the sub-section is in the conjunctive and apparently requires both that an arrest could have been effected and that "bail or other security *has been furnished*" in connection with an arrest. (Italics added). Both conditions must be fulfilled.

Article 1(3) of the Brussels Convention prohibits a claimant from bringing a second and identical claim against the same defendant in another jurisdiction "without discontinuing an action already instituted." Does this include cases where a voluntary dismissal is prevented by the existence of a defendant's counterclaim? Is this provision limited to discontinuance of *in rem* actions or does the prohibition include proceedings *in personam*?

These problems of interpretation arise out of a compact to which the United States is not a party. No decisions by the courts of the signatory nations light the way. It is a virginal area of law. Even if the meaning of the Brussels Convention were clear, there remains the question of whether our admiralty courts recognize treaty restrictions which would affect their traditional jurisdiction over collisions of foreign-owned vessels.

■ To re-intone the Fifth Circuit liturgy, admiralty courts in this country must retain jurisdiction over *in rem* actions in collisions between vessels of different nationalities unless the defendant vessel or owner establishes existence of special circumstances which would work an injustice if the court took jurisdiction.[6] The fact that the rule of valuation in limitation of liability is more liberal in this country than the Canadian standard does not make retention of jurisdiction unjust. The foreign shipowner can avail himself of the right, in a proper case, to libel another foreign-owned vessel in the admiralty courts of this country where the maritime law may be more favorable to him. His doing so does not, without more, warrant declension of jurisdiction.

■ Inconvenience of the Savannah forum to defendant does not in itself work an injustice to the shipowner.[7] See the decision in The Netuno, 474 F. 2d at 205, note 5. Multiple jurisdiction may result in an injustice to a defendant. It is conceivable though improbable that the Canadian Court and this Court would both proceed to judgment in this case. It is possible, too, that the counterclaim would be tried in the former and plaintiff's case in the latter. I add that the Canadian Court seemingly has not pushed the litigation at Mon-

---

5. Defendant's brief challenges this holding. Counsel cite The Report of Maritime Cases, Vol. 9 New Series, page 104. They inform me that "the English rules are virtually identical to the rules of the Federal Court of Canada and were undoubtedly their source." In *The Crimdon* the Court said, "Now, the good and sufficient reason suggested by the plaintiffs in this case is a broad one—namely, that they were not bound to accept a solicitor's undertaking, and were entitled to arrest the ship. I think that that is an erroneous position to take up, having regard to the rules and practice of this court. It seems to me that the position arrived at by these rules is analogous to that of bail being tendered."

6. Judge Hoffman thus puts *The Belgenland* rule: "Once the respondent has met the burden of showing that the interests of justice tend to require the action to be heard elsewhere, the district court may then exercise its discretion to retain jurisdiction, or to decline same." Anglo-American Grain Co., Ltd. v. The S/T Mina D'Amico, 169 F.Supp. 908, 911 (E.D.Va.).

7. As I pointed out in the first *Netuno* decision, this case can be transferred under § 1404(a) to Michigan where the action was initially brought by the owner of the *Netuno* against the owner of the *Transmichigan*.

treal because the owner of the *Transmichigan* has not desired to do so.

 It is settled in our admiralty law that the choice of forum by a foreign plaintiff "should rarely be disturbed" and that the libelant with a maritime lien may proceed *in rem* in the jurisdiction where the vessel is found. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055; *Motor Distributors, supra*, 239 F.2d at 467; *The Belgenland, supra*, 114 U.S. at 368, 5 S.Ct. 860, 29 L.Ed. 152.[8] Where a maritime controversy arises under the common law of nations, an alien plaintiff may attach the property of an alien defendant wherever it is found and only if the latter can show unfair prejudice can he avoid such an action in the admiralty courts of this country. See *The Farmer, supra*, 210 F.2d 755–756; *Motor Distributors, supra*; The Netuno, 474 F.2d at 204. On the other hand, in The Bremen v. Zapata Off-Shore Co. which arose from damage to a seagoing rig during a towing operation the Supreme Court of the United States relegated the American plaintiff to litigating the dispute before the English Court designated in the towage contract.[9]

There is a possible squaring off of the Brussels Convention of 1952 and the American doctrine. An international compact entered into by the sovereigns of colliding vessels should be accorded a dignity and force at least equal that possessed by a private forum-selection clause such as the one dealt with in *The Bremen*. If a ruling were required, this Court would likely hold that the Convention of 1952 has the same effect as a private contract as far as judicial deference by our admiralty courts is concerned in the case of jurisdiction over collisions of foreign vessels.

Poseidon brought its first action at Montreal. Jurisdiction existed there under Canadian law and the proceeding in the Federal Court of Canada is sanctioned by the Brussels Convention. Article 1(c) of that compact provides that actions in collision cases may be brought in a court "where arrest has been effected of the defendant ship." This is apparently a recognition of the *communis juris* doctrine that a foreign vessel is subject to arrest wherever she is found. The *Netuno* was not arrested at Savannah. However, the written "waiver of arrest of vessel" states that the effect is the same as service of a warrant therefor. Subject to the existence of "injustice" because of special circumstances, this Court has jurisdiction. The action brought in this District does not run afoul the Brussels Convention, that is, with the possible exception of the pendency of the same litigation in the Federal Court of Canada.

Were it clear that bail or security was given at Montreal by the owner of the *Netuno* in an *in rem* action or if the Convention prohibits a second suit in another jurisdiction without discontinuing a pending *in personam* action, I would exercise my discretion and dismiss the suit on the ground that retention would work an injustice on defendant. But the Convention of 1952 speaks only in broad and general terms. Article 1 is characterized by concision rather than precision. This Court cannot, under the circumstances, undertake a definitive construction of Article 1 as it is related to this case.

 I find, in conspect, no special circumstances affirmatively establishing that retention of jurisdiction would work an injustice. Accordingly, defendant's motion to dismiss is overruled.

 This action is subject to transfer for convenience and the interest of jus-

---

8. See Anglo-American Grain Co., *supra*, at 912–913 for a criticism of the "dictum" in Motor Distributors to the effect that jurisdiction can never be declined in any *in rem* proceeding involving ocean-going carriers.

9. "Any dispute arising must be treated before the London Court of Justice."

418

tice and this Court may order same of its own motion. See 28 U.S.C. § 1404(a); United States v. National City Lines, Inc., D.C., 80 F.Supp. 734, 737–738; In re Aircrash near Duarte, California, D.C., 357 F.Supp. 1013, 1015.

The collision occurred on or near the International Boundary in the vicinity of Port Huron, Michigan, in the channel where the St. Clair River enters Lake Huron. Some of the witnesses reside at Port Huron. Other than certain of the personnel of the two vessels, the witnesses are from that part of the United States and Canada. Both the *Netuno* and the *Transmichigan* were repaired at Montreal. Savannah is around 800 miles from the site of the collision. The only connection of the Southern District of Georgia with the case is the arrest of the *Netuno* at this port in September, 1971, at the time she made a fortuitous visit here. The defendant has not moved for a transfer but one of the grounds of its contention that this Court should not retain jurisdiction is the inconvenience of this forum.

As already noted, a suit in admiralty was initially brought in the Eastern District of Michigan by the owner of the *Netuno* against the *Transmichigan*.[10] Jurisdiction could have been obtained by Poseidon in the United States District Court at Detroit through arrest of the *Netuno* which had proceeded to that city following the collision. Port Huron is in the Eastern District of Michigan. Article 1(c) of the Brussels Convention of 1952 authorizes an action in that District which is "the Court of the place when the collision has occurred . . . in inland waters."

For these reasons, this case is transferred, pursuant to § 1404(a), to the Eastern District of Michigan. The transfer will be stayed for a period of thirty days from this date.

10. The apparent purpose of that action, which was shortly dismissed, was to obtain prompt discovery from eyewitnesses.